Grant *v.* Hotchkiss.

[NEW YORK GENERAL TERM, November 2, 1857. *Mitchell, Clerke* and *Davies,* Justices.]

———•••———

## GRANT and others *vs.* HOTCHKISS.

Upon a guaranty that " all drafts drawn by G. C. H. will be duly honored and paid by me, should he meet with any misfortune that he will not be able to do it himself," the guarantor undertakes to pay the amount of the drafts if G. C. H. shall not be able to do it himself. It is not therefore necessary for the acceptors to prove that they have exhausted their remedy against G. C. H. It is only necessary to show that the drafts were not paid when they became due.

APPEAL from an order made at a special term, overruling a demurrer to the complaint. The complaint alleged that the plaintiffs were partners in trade, carrying on business as commission merchants at the city of New York, under the style and firm of Grant, Sayles & Co. That the said defendant in the month of August, 1855, introduced to the plaintiffs one George C. Hotchkiss, and solicited them to permit the said George C. Hotchkiss (then a merchant, carrying on business at Youngstown, N. Y., and who was about purchasing wheat to forward the same to New York, for sale,) to make drafts on them, the said plaintiffs, for the purchase of said wheat. That the said defendant, for the purpose of securing these plaintiffs in the said business, on the 5th day of November in the said year, (1855,) addressed to said plaintiffs a letter by him subscribed, containing among other things the following paragraph: "In reply, I would state that all drafts drawn by George C. Hotchkiss will be duly honored and paid by me, should he meet with any misfortune that he will not be able to do it himself." The complaint further alleged that the said George C. Hotchkiss in said letter referred to, in the course of the aforesaid business and subsequent to the date of the said letter, made drafts on the plaintiffs for the sum of $6500 in the aggregate, which the plaintiffs, on the faith of the undertaking of the defendant as contained in the said letter, and at his request, accepted and paid. And the plaintiffs averred that the said George C. Hotchkiss had failed and neglected to pay or cause the same to be paid in full, or to provide means for the payment thereof by the shipment of wheat or otherwise, and that there was a balance due and payable to them thereon of $1229.91, for which sum, with interest and costs, the plaintiffs demanded judgment.

To this complaint the defendant demurred, on the ground that it did not state facts sufficient to constitute a cause of action; also that it did not appear in the letter of the defendant, set forth in the complaint, that there was any consideration, as required by statute, expressed therein; that it

appeared from said letter that the defendant agreed to pay only in case Hotchkiss should meet with any misfortune that he would not be able to do it himself, and that it nowhere appeared in the complaint that Hotchkiss had met with any loss or misfortune by which he was unable to pay the drafts; and that it nowhere appeared that the plaintiffs had in any way endeavored to collect their claim of Hotchkiss, or had in any way settled or adjusted the same with him; neither did it appear in the complaint that all or any drafts drawn at the date of the said letter were unpaid, or any part thereof.

The following opinion was delivered at the special term, by the judge before whom the demurrer was argued:

CLERKE, J. "Every obligation of a surety is a liability accessory or collateral to that of another person. Under no form of expression can it be any thing else. If the contract imports more than this, he becomes a principal debtor. But the contract of a surety may be for the payment of the debt when it becomes due, or it may only amount to an assurance that the principal debtor is solvent and that the demand can be enforced against him. In the one case the surety is liable at once, on the failure of the principal to satisfy the demand; on the other, he is liable only when the necessary legal means of enforcing compliance against the principal have been exhausted, or at least in proving by legal evidence that he was not solvent. To determine to which class any guaranty belongs depends of course upon the construction of the language employed.

The guaranty mentioned in *Curtis* v. *Smallman*, (14 *Wend.* 231,) was in these terms, 'I warrant the note good,' and it was decided in that case to be a guaranty that the note was collectible, and not that it would be paid on demand. This was deemed to be the ordinary popular signification of the phrase. The language of the guaranty before me is in these words—'all drafts drawn by Geo. C. Hotchkiss will be duly

Grant *v.* Hotchkiss.

honored and paid by me, should he meet with any misfortune that he will not be able to do it himself.' This is not an assurance that G. C. H. was then a solvent person and that he was good for the amount, but a promise if he should not pay it that the defendant would. It does not warrant the solvency of the principal, but guaranties the payment of the debt. It says nothing or imports nothing at all of the then present ability of George C. Hotchkiss, but expressly stipulates the payment of the debt when due, if from misfortune he should not be able in his own person to satisfy the demand. This may be a slender, perhaps an imaginary distinction, but it is one evidently recognized in our law. This word misfortune comprehends any cause which may prevent the principal from paying the debt. The defendant, in short, undertook to pay the amount of the drafts, if the principal should not be able to do it himself. It was not therefore necessary for the plaintiffs to prove that they had exhausted their remedy against G. C. H.; it was only necessary to show that the drafts had not been paid when they became due. The next objection is, that the guaranty does not sufficiently state a consideration. The complaint, in substance, states that the defendant, in August 1853, introduced G. C. H. to the plaintiffs and solicited them to permit the said G. C. H. to make drafts on them on wheat, which he proposed to consign to the plaintiffs in New York, to sell for him on commission. That for the purpose of securing the plaintiffs, the defendant addressed a letter to them containing the words which I have already quoted. It is contended that this case comes within the decision of *Brewster* v. *Silence*, (4 *Seld.* 207;) but it may with much greater truth be insisted that it comes within the decision of the *Union Bank* v. *Coster's Ex'rs*, (3 *Coms.* 202;) and the still more recent case of *Gates* v. *McKee*, (3 *Kern.* 232.) The consideration in this last case is stated almost precisely in the same terms as the case in this guaranty. In the one it is, 'I will be responsible for what stock M. E. McKee has had, or may want hereafter, to the amount of $500.' In the case

Grant *v.* Hotchkiss.

before us the language is, 'all drafts drawn by G. C. H. will be duly honored and paid by me,' &c. The consideration in the one is stock to be delivered, in the other, money to be advanced on the drafts. In this case the transaction set forth in the complaint shows that the drafts were to be honored by the plaintiffs, on wheat to be consigned to them; and if there is any thing ambiguous in the language of the defendant's letter, according to well established principles reiterated in the cases to which I have referred, "parol evidence of the circumstances under which the contract was made may be given." Both the circumstances and the contract constitute in the present case a full and perfect consideration, and are distinctly set forth in the complaint. *Brewster* v. *Silence* presented a guaranty, without stating on its face any consideration, and the question seemed to be whether the note and guaranty should be treated as constituting one instrument. The court say that the words value received would probably have sufficed: but as the guaranty did not embrace any such words, and as the note was treated as a distinct pre-existing and separate instrument, it was held that as the contract of guaranty stated no consideration or satisfactory reference to the consideration, it was void by the statute of frauds. There may be a conflict in some respects between this case and that of *Gates* v. *McKee*, and of the *Union Bank* v. *Coster's Ex'rs*, but I have no hesitation in yielding my homage, if there is a conflict, to these cases, in preference to that of *Brewster* v. *Silence.*"

From the order made in accordance with this opinion, the defendant appealed.

*Ely & Farnell,* for the appellant.

*Platt, Gerard & Buckley,* for the respondent.

*By the Court,* MITCHELL, P. J. The guaranty, or rather promise, by the defendant, was that "all drafts drawn by

Geo. C. Hotchkiss will be duly *honored* and paid by *me,* should he meet with any misfortune that he will not be able *to do it* himself." The defendant insists that this is a guaranty only to pay if the amount cannot be collected of Geo. C. Hotchkiss. It is hardly necessary to add any thing to the opinion given at the special term. But it is very plain that the defendant promised to honor and pay the draft, should Hotchkiss not be able to do it; that is, should Hotchkiss not be able both to *honor* and pay the draft. When Hotchkiss failed to cause the drafts to be paid at maturity, by some one else than the plaintiffs, he failed to honor and pay them. And this, it is to be assumed, is the misfortune referred to in the guaranty, and on that failure the defendant's agreement was express that he would *honor* and pay the drafts. A draft is not honored when it is allowed to be protested; nor is it honored by the drawer for whose accommodation it is drawn, when he leaves it to the accommodation acceptor to pay it, and does not supply the latter with funds.

The judgment for the plaintiff should be affirmed, with costs.

[New York General Term, November 2, 1857. *Mitchell, Clerke* and *Davies,* Justices.]