Dunning *v.* Roberts.

[SCHENECTADY GENERAL TERM, January 7, 1862. *Rosekrans, Potter* and *Bockes*, Justices.]

---

## DUNNING & SMITH *vs.* ROBERTS.

One who has employed an agent is responsible for his acts, so long as the agent acts within the limits of the authority with which he has been apparently clothed, with respect to the subject matter.

As a general rule, he who employs an agent shall lose by his fraudulent, negligent or illegal act, rather than an innocent person.

It is a universal rule, based on principles of policy, propriety and justice, that if a principal puts his agent in a condition to impose on innocent third persons, by apparently pursuing his authority, he shall be bound by his acts.

Where the defendant employed E. G. R. (who was not the regular telegraphic operator) as his agent, to send a message by telegraph, to the plaintiffs, by which the defendant guarantied the responsibility of one H., and the agent, through a misunderstanding of the directions, sent a message by which the defendant agreed to be responsible for a bill of goods ordered by P.; *Held* that the defendant was bound by the act of E. G. R. in sending the mes-

---

---

sage, and was liable to the plaintiffs for the goods forwarded to P. in pursuance thereof.

*Held, also,* that the manipulations of E. G. R., by which the defendant's name became appended to the dispatch, were the defendant's own, and were equivalent to an actual personal signing of his name with pen and ink.

P. having ordered goods, of the plaintiffs, which they had declined to forward, on his order, the defendant sent a message to the plaintiffs, by telegraph, saying, "I will be responsible for P.'s bill of goods ordered yesterday." On the faith of this promise, and on the defendant's credit and responsibility, the plaintiffs delivered the property, and charged the price to him. *Held* that the promise was not void for want of a present consideration expressed on its face.

*Held, also,* that this was not a case of guaranty, but one of bargain and sale, between the parties.

APPEAL from a judgment entered upon the report of a referee. The opinion of the court contains a statement of all the material facts. The referee reported in favor of the plaintiffs, for the amount claimed by them, with costs; and the defendant appealed.

*G. M. & G. H. Beckwith,* for the appellant.

*Averill & Rich,* for the respondents.

*By the Court,* BOCKES, J. The action was brought to recover the price of certain articles of personal property, alleged to have been sold and delivered to one L. A. Porter at the instance and request of the defendant, and on his credit and responsibility.

The cause was put at issue, and was referred to a referee to hear and determine. The referee found the material issues in favor of the plaintiffs, and awarded judgment against the defendant for the value of the property. If his conclusions of fact are well found, it follows that the judgment must be affirmed, unless some principle of law has been violated in his legal conclusions. It becomes necessary, first, therefore, to examine the testimony, in order to determine in regard to the correctness of his findings of fact.

The referee finds that the plaintiffs were hardware merchants at Champlain; that the defendant resided at Chateaugay. Porter telegraphed to the plaintiffs to send him the property mentioned in the complaint. The plaintiffs, distrusting Porter's responsibility, did not send the property on his order. The next day they received a telegram purporting to come from the defendant, directed to them, as follows:

" To G. E. Dunning & Co.,

        I will be responsible for Porter's bill of goods ordered yesterday.            A. ROBERTS."

Thereupon they forwarded the property. The referee further finds that the defendant authorized a message (telegram) to be sent in his name; and that the property was forwarded in pursuance of the telegram and upon the credit of the defendant. The facts found and stated by the referee, are well sustained by the proof.

It seems that the telegram was determined on, after considerable conversation between the defendant, Porter and one Hall. The regular telegraphic operator was absent. Edwin G. Roberts sent the dispatch, as he testified, for the accommodation of the parties. He swears that the defendant was in the office at the time the message was sent; asked if he (Edwin) was sure he had not made a mistake, and whether Porter could get any more goods than those ordered by the telegram. He further testified that he sent the dispatch as he understood it at the time; that he wrote it down; that the defendant was there when the message was sent. The defendant testified that he saw Edwin telegraphing; that he thought Hall gave him directions to telegraph, because he supposed he would, after what he had said to Hall. Hall testified that all three (himself, Porter and defendant) *agreed to the message sent.*

This evidence is clearly to the effect that Edwin telegraphed as the authorized agent of the defendant. There is also other evidence in the case tending to prove the same fact.

Dunning *v.* Roberts.

But it is urged that the defendant did not authorize the message as sent, but one of an entirely different purport. It is claimed that the message authorized to be sent was to the effect that Hall was responsible, and that he (defendant) would guaranty Hall's responsibility.

The referee finds that it was left for Edwin to send such a message as he at the time, from the conversation of the parties, understood the defendant wished him to send; and that he did so. He also finds that Edwin did not correctly understand the purport of the conversation, and instead of sending a message guaranteeing the responsibility of Hall, he sent the one above copied.

Under the evidence, it was a fair question of fact whether the defendant did not authorize the telegram as sent. True, he swears he did not. But Edwin swears he sent it as he understood it at the time; that he wrote it down as he understood it from the parties, and that the defendant was there when the message was sent. Hall swears that all three agreed to the message. Had the referee found, therefore, that the defendant authorized the telegram forwarded by Edwin, such finding would not have been either unsupported by or against the evidence.

But the referee puts the decision, as regards this branch of the case, on the ground that the defendant having employed an agent, is responsible for his acts; it appearing that he acted within the scope of his authority. In this, too, I think the referee is right.

The defendant employed E. G. Roberts to transmit to the plaintiffs a message on which he desired them to act—a message on which they were expected to part with their property, and in pursuance of which the property desired was delivered. He entered upon the subject matter of his employment, and in the performance of his duties, either through his own or his principal's carelessness he committed a blunder, by which the plaintiffs were deprived of their goods. The plaintiffs were guilty of no fraud or negligence. They supposed they

were dealing with the defendant, and in fact were dealing with a person whom the defendant had authorized to act in his behalf, and who indeed acted in his actual presence. As a general rule, he who employs an agent shall lose by his fraudulent, negligent or illegal act, in preference to an innocent third person. By employing him he warrants his competency, fidelity and good conduct in all matters within the scope of his agency. In this case the defendant put Edwin in motion, and superintended his action in person, thus clothing him with actual as well as apparent authority.

It is insisted by the defendant's counsel that a principal is not bound by the acts of his agent not authorized by him. This is undoubtedly true when the agent's acts have no relation to the subject matter of the agency. So, too, in some cases of a special or limited agency. But the proposition is quite too broad in its general purport to be sustained; for principals have been often held liable for false representations of their agents; also on warranties by agents, when they have been expressly restricted from warranting. So it has been well said that an agent may bind his principal within the limits of the authority with which he has been apparently clothed with respect to the subject matter. The liability of a principal is rather to be determined from the authority he allows the agent to assume, than from that which the agent actually receives, as was said by Allen, J. in *Johnson* v. *Jones*, (4 *Barb.* 369, 373.) In these cases the real question is not what power was intended to be given to the agent, but what power a third person who dealt with him had a right to infer he possessed, from his own acts and those of his principal. (*See also Bridenbecker* v. *Lowell*, 32 *Barb.* 9.) It is a universal rule, based on principles of policy, propriety and justice, that if a principal puts his agent in a condition to impose on innocent third persons by apparently pursuing his authority, he shall be bound by his acts.

In this case the defendant had agreed or consented to pledge his responsibility in order to obtain the plaintiff's

property for Porter. He employed Edwin to consummate his purpose. The property was obtained through Edwin's instrumentality. If any error was committed in executing the business of his employment, it was by reason of Edwin's incompetency, infirmity, or negligence, or the carelessness or negligence of the defendant. In either case the defendant's liability to the plaintiffs is clear, upon principle and authority.

But the referee has found that it was left to Edwin to send such message as he, at the time, from the conversation of the parties, understood the defendant wished him to send; and that he did so. If this be well found, the case is put beyond all possible question; for if the defendant authorized him to send such message as he understood should be sent, and he did so, he executed his duty pursuant to, and strictly in accordance with, the defendant's express instructions.

It cannot be said that there was no evidence to sustain this conclusion of the referee. The message was the result of an arrangement, after considerable conversation between Porter, Hall and the defendant. Edwin was called to forward the message. The arrangement was made in his presence, and he was to send a telegram pursuant thereto. Thus it seems the case is not destitute of evidence on this point, and the report of a referee, like the verdict of a jury, will not be set aside unless unsupported by or clearly against evidence. (16 *Barb.* 146. 15 *id.* 28.)

It is insisted that the supposed liability of the defendant is as surety for Porter, and hence that the agreement or promise is within the statute of frauds, and void.

It is first urged that the telegram was not subscribed by the defendant nor by his authority. But it has been above determined that under the circumstances of this case the act of Edwin G. Roberts, in forwarding the telegram, was the act of the defendant. In law, therefore, the manipulations of Edwin by which the defendant's name became appended to the dispatch were his own, and were equivalent to an actual personal signing of his name with pen and ink.

Dunning *v.* Roberts.

It is further insisted that the promise is void, "because it expresses on its face no present consideration."

The paper reads thus : " I will be responsible for Porter's bill of goods ordered yesterday." The case shows that Porter had ordered the goods, and that the plaintiffs declined to deliver them on his order. Then this despatch was sent to them. Its purport was that if they would deliver the goods, he (the defendant) would pay for them. On the faith of this promise, and on the defendant's credit and responsibility, the plaintiffs delivered the property and charged the price to him. In *Gates* v. *McKee,* (3 *Kern.* 233,) the defendant wrote the plaintiff as follows : " Sir, I will be responsible for what stock M. E. McKee has had or may want hereafter, to the amount of five hundred dollars." This was held to express a consideration within the requirements of the statute of frauds, and to make the defendant liable for stock thereafter delivered to M. E. McKee on the faith of it. This decision was put, as regards this point, on the authority of the *Union Bank* v. *Coster,* (3 *Comst.* 203. *See also Grant* v. *Hotchkiss,* 26 *Barb.* 63 ; *Church* v. *Brown,* 21 *N. Y. Rep.* 315.) In the case last cited the instrument read thus : " I will be responsible for all such goods as Mr. White shall buy of the Messrs. Church, within one year from date, and which shall not be paid for according to the terms of the within contract." The referee before whom the case was tried held the instrument within the statute of frauds and void, because no consideration was expressed therein. His decision was affirmed on appeal. (29 *Barb.* 486.) But, on appeal to the court of appeals, the judgment was reversed ; that court holding that the instrument contained a sufficient expression of the consideration to be valid under the statute of frauds.

The case of *Brewster* v. *Silence* (4 *Seld.* 207) was here examined and explained. Indeed, Judge Comstock declares that such case was not correctly decided. (21 *N. Y. Rep.* 329.) The decisions in the *Union Bank* v. *Coster,* and in

*Gates* v. *McKee* were approved and followed in *Church* v. *Brown.*

Comstock, J. in this case says, the writing "itself discloses the consideration on which it was given to be the prospective sale of goods to another person;" and he adds, "that this is sufficient within the statute of frauds, is certainly plain in principle, and is moreover as well settled by authority as any legal proposition can be." And further, "an undertaking by one person to be responsible for goods to be delivered to another, is in effect a request to deliver the goods." He cites numerous authorities, and among them the *Union Bank* v. *Coster,* and *Gates* v. *McKee.*

The decision in these cases dispels all possible question as regards the validity of the defendant's undertaking in this action. In *Gates* v. *McKee* the language of the instrument was, "I will be responsible for what stock M. E. McKee has had or may want hereafter, to the amount of five hundred dollars." In *Church* v. *Brown* it read thus : "I will be responsible for all such goods as Mr. White shall buy of the Messrs. Church, within one year from date, and which shall not be paid for according to the terms of the within contract." In the case at bar the undertaking is as follows : "I will be responsible for Porter's bill of goods ordered yesterday." The cases cited hold these instruments good and binding ; that they contain a sufficient expression of the consideration to be valid under the statute of frauds.

Judge Wright, in delivering the opinion of the court in *Church* v. *Brown,* says, "the promise (to be responsible) implied a request to furnish the goods to White, and a compliance on the part of the plaintiffs closed the contract, and made it binding." He adds, "although it was necessary to show performance by the promissor, by parol evidence, yet, as was said in the *Union Bank* v. *Coster,* such evidence is no violation of the statute requiring the consideration to be in writing. The consideration of the promise is expressed, and the parol evidence is only used to show not what the consid-

Dunning *v*. Roberts.

eration is, but that the act which constitutes that consideration has been performed."

It was competent, therefore, in this case, to show the circumstances under which the telegram was sent to the plaintiffs; that they had refused or declined to deliver the goods on Porter's order, and retained the property until the defendant promised to be responsible, whereupon, and on his credit, delivery was made.

Considered in the aspect most favorable for the defendant, the decisions referred to are conclusive in the plaintiffs' favor.

But I do not deem this a case of guaranty. Its circumstances show it to have been one of bargain and sale, between the parties. The defendant did not guaranty the payment of Porter's debt, nor was credit at all given to Porter, but to the defendant only. True, Porter received the property, but he did not become originally liable, for it was delivered on the defendant's credit and was charged to him. As remarked by Judge Clerke, in *Grant* v. *Hotchkiss*, (*supra*,) "every obligation of a surety is a liability accessory or collateral to that of another person. If the contract import more than this, the party becomes a principal debtor."

The point is taken that the referee erred in permitting the copy of the telegram to be given in evidence without accounting for the absence of the original. The case shows due search for and loss of the original, if indeed it was necessary to account for its absence, under the circumstances of the case.

The judgment must be affirmed.

[SCHENECTADY GENERAL TERM, January 7, 1862. *Rosekrans*, *Potter* and *Bockes*, Justices.]