## SUPREME COURT.

JOHN HECKER agt. THE MAYOR, &C., OF NEW YORK, and others.

An *injunction* should not be granted upon the mere *verification* of the complaint. Nor upon statements on *information and belief*, without showing the source of information. It is only where the verification of the complaint is *positive* that it will suffice as an *affidavit*.

Under the ordinances of the common council of the city of New York, the whole charge and supervision of *cleaning the streets* of the city, whether by contract or otherwise, is delegated to the *city inspector* and his subordinate officers, to be performed in the mode prescribed by law. He is the general agent of the city, who within the delegated authority is authorized to bind them.

Nor is it only in reference to the cleaning of the streets that such power is conferred upon the city inspector. For various purposes he has authority to employ men to work for the corporation, either by contract or by day's work.

All these varied causes of employment within the general scope of his authority, give him the power to employ men for those purposes, and when so employed they become entitled to claim from the city compensation for the services they may render.

The doctrine of *ratification* applies to municipal corporations as well as to individuals. And where the corporation of the city of New York not only do not deny their liability, but expressly ratify and confirm the acts of the city inspector, and pass resolutions to provide for the payment of the claims of the workmen and laborers employed by him, such claims are valid against the municipal authorities.

The corporation of the city of New York are liable to be sued and to have judgment rendered against them, although no means have been provided by which the liabilities can be discharged.

*New York Special Term, January*, 1865.

MOTION to dissolve injunction.

JOHN E. DEVELIN, *counsel to the corporation, for the motion.*

, *opposed.*

INGRAHAM, J.    Many of the questions which will be raised in this action are of such a character that they ought not to be finally decided on a preliminary motion to dissolve the injunction, and among them are the questions as to the right of the plaintiff to bring this action, and the remedy which the plaintiff may eventually be entitled to if he should succeed on the trial of the case.    Upon those questions I refrain from expressing any opinion, because there are other valid grounds upon which my decision of this motion must rest.

The defendant, the comptroller, is restrained from paying out any public moneys upon any requisition or pay roll of the city inspector, for cleaning the streets of the city of New York, the defendant, the counsel, is enjoined from consenting to any judgment against the city for any work done in cleaning the streets, and the comptroller and mayor are restrained from signing warrants for the payment of any moneys therefor, and from paying any judgment.    The complaint charges an agreement between the defendants to raise the money by a note, and then to obtain judgment against the city for the claims to be transferred to Palmer, and an entry of the judgment that the comptroller should give a warrant therefor upon the chamberlain.    All the other allegations in the complaint are upon mere information and belief, but it is not stated from what source the information was derived, nor is any information presented to the court by which the court can judge whether such information was true or not.    This complaint is verified by the plaintiff in the usual manner as to his knowledge, and his belief of the matters stated on information.

There was no other affidavit on which the injunction was issued.

1. I have repeatedly held that an injunction should not be granted upon the mere verification of the complaint. This has always been the rule, and was so before the Code.

(*Campbell* agt. *Merwin*, 7 *Paige*, 157 ; *Christie* agt. *Bogardus*, 1 *Barb. Ch.* 167 ; *see also* 9 *Paige*, 305 ; 2 *Barb. Ch.* 276.) And such rule has been adhered to since the adoption of the Code (*Jewett* agt. *Allen*, 3 *How. Pr.* 129, *and various other cases*). So also the rule that statements on information and belief are not sufficient without showing the source of information, is sanctioned. (*People* agt. *The Mayor*, 9 *Abb. Pr.* 258 ; *Fowler* agt. *Bruce*, 7 *Bosw.* .637.) The 220th section of the Code provides that the injunction may be granted upon its appearing satisfactory to the court or judge, by the affidavit of the plaintiff or other person, that sufficient grounds exist therefor, and the complaint is to be produced to show that the plaintiff is entitled to the relief demanded. This does not allow of the ordinary form of verification where the matters are stated on information and belief (*Bostwick* agt. *Elton*, 25 *How.* 362), and it is only where the verification of the complaint is positive that it will suffice as the affidavit.

2. The ordinances of the common council of the city provide for the city inspector's department, and among the duties devolved upon that officer is that of cleaning the public streets (*Corp. Ord. p.* 154). In that ordinance provision is made for a bureau of sanitary inspection and street cleaning. The officer is required to keep correct accounts of the time of the men employed, and of the work done by them, and the expense where not done by contract.

The 37th section, page 161, provides for auditing the bills and accounts for work done under his supervision, requires him to certify such accounts to the city inspector for all such work, and prohibits the comptroller from paying any bills or money for the work of street cleaning, either by contract or otherwise, until audited and approved by the city inspector. A subsequent article provides for the duties of this officer, where a contract is made for cleaning the streets. Under these provisions, it is apparent that the whole charge and supervision of cleaning the

streets, whether by contract or otherwise, is delegated to the city inspector and his subordinate officers, to be performed of course in the mode prescribed by law. For that purpose he is the general agent of the city, who within the delegated authority is authorized to bind them. Nor is it only in reference to the cleaning of the streets that such power is conferred upon the city inspector. For various purposes he has authority to employ men to work for the corporation, either by contract or by day's work. All these varied causes of employment, within the general scope of his authority, give him the power to employ men for those purposes, and when so employed they become entitled to claim from the city compensation for the services they may render.

In *Dunning* agt. *Roberts* (35 *Barb.* 463), it was said : " In such cases the real question is, not what power was intended to be given to the agent, but what power a third person who dealt with him had a right to infer he possessed, from his own acts and those of his principal." And such acts, although unauthorized in the first instance, may be ratified by the common council. The doctrine of ratification applies to municipal corporations as well as to individuals (*Peterson* agt. *The Mayor, &c.* 17 *N. Y.* 449). *And in Brady* agt. *The Mayor* (20 *N. Y.* 312), DENIO, J., while holding that a man cannot recover who makes a contract with the city contrary to the provisions of law, notices as distinct from such a case that of one who has *bona fide* performed labor under such a contract, and may recover what such labor is worth.

The alleged payments are to be made to men who claim to have done work for the city under the directions of the city inspector. It may be doubted whether under the provisions in the city charter, and the provisions in the act of 1864, the city inspector has now any authority to employ persons to clean the streets, except by contract, under his general power as city inspector. Either the board of

health or the common council might give such directions as would make them liable to pay the parties employed, even if done in a way different from that contemplated by the statute. How far they would be responsible for such acts in violation of the law, it is not necessary for me now to inquire. Under the law as now framed, they might expose themselves to responsibilities which prudent men would not seek unnecessarily to assume. The city inspector, however, still has the control and duty of cleaning the streets in some way as provided by law, which work is done by men under the directions of a public officer in matters within his control, and to do which he is by law particularly charged; those employed by him for such purposes are not, in my judgment, before doing a day's labor, to stop and examine whether the city inspector is acting in exact conformity to the law, or whether the work is going on in the exact form which some statute has prescribed. The law presumes the officer is acting in conformity to his duty, and an employee in the ordinary course of business under the officer, has a right to the same presumption. But admitting there was some doubt as to the correctness of these views, I think such doubt is removed by the fact that the common council ratified the act of the city inspector when they passed the resolution requesting the mayor to sign the note for the payment of the men, and engaging to indemnify the parties to it against any liability or damage to be sustained thereby.

If the corporation of the city of New York resisted the claim of the workmen, and denied the authority of their officer to employ the men to do the work, the question would be very different; but where they not only do not deny their liability, but expressly ratify and confirm the acts of the city inspector, and pass resolutions to provide for the payment of the claims, I can have no doubt of the validity of the claims for the work so done against the municipal authorities. The remedy to prevent such viola-

tions of law is entirely different from confiscating the labor of those who have worked or rendered services that have gone to the benefit of the public, and must be sought by proceedings against the officer who violates the law, or the body which authorizes such violation. I am aware of the class of cases where a defence has been attempted upon the ground that no appropriation had been made from which such claims could be paid.

In the case of *Ewen* agt. *The Mayor, &c.* (5 *Abb.* 503), a judgment was rendered in favor of the city upon that ground, but such judgment has since been reversed by the general term of the common pleas, and judgment rendered against the city. And in *Darlington* agt. *The Mayor, &c., in the court of appeals*, it was held by a majority of the court that the city was liable to be sued and to have judgment rendered against them, although no means were provided by which the liabilities could be discharged. In all these cases the corporation were defending the claims, and they do not present the question which arises in this case, whether, when the public authorities have exceeded the bounds which the legislature has prescribed to them, men who have ignorantly worked for the public use under their authority, should be deprived of their pay on account of such violation of the law.

How far the means resorted to for obtaining payment for these notes given to Palmer are consistent with law, I am not prepared to say. It can hardly be contended that the legislature when providing for the payment of judgments recovered against the city during the year, contemplated that such provisions should be used for the purpose of paying for work which they had prohibited from being done except in a particular way. If there are no funds from which the payment could be directly made, it is difficult to find any authority for making such payment in a way that can bear no other name than an evasion of the law.

It is not necessary, however, for me to say more on this subject, since the course adopted by these officers has been ratified by the city, and the payment of the moneys guaranteed by them. I consider this sufficient to entitle the workmen and laborers to payment, and renders the corporation liable to them therefor. For the reasons before stated, I am therefore of the opinion that these claims are valid and should be paid, and that the injunction cannot be sustained.

Motion to dissolve the injunction granted.