## HOWLEY v. WHIPPLE ET ALS.

Evidence that a telegraphic despatch was sent from Northumberland to Montreal addressed to " A. G.", and that a telegraphic reply was received very soon, purporting to come from " A. G." and to be sent from Montreal, is not competent to show that " A. G." was at the time in Montreal.

TRESPASS *quare clausum.*

The question in dispute related to the boundary line between two lots of land in Northumberland.    It appeared that in 1855 one of these lots was owned by Charles Bellows, and the other by Ira Gould, who was in business in Montreal, and was occasionally in Northumberland, his son, Joseph Gould, living on the farm.   Defendants introduced two witnesses who testified, in substance, that in 1855, (one of the witnesses thought in June), Bellows, the two Goulds, and a surveyor, met one morning near the premises in dispute ; that they went together to a fence standing on or near another part of the line ;  that there Ira Gould and Bellows agreed that the surveyor should go on and run out and establish the line, and that they would abide by it ; that after making this agreement Ira Gould said he was obliged to go to Montreal on business, but that his son Joseph would remain with the surveying party, and that he should acquiesce in whatever Joseph might do ; and that Joseph remained through the running of the line.

Plaintiff subsequently called Wm. K. Richey, who testified that, at the time which, from his description, the jury might have found to be the time the line was run, he passed down the road, and saw Bellows, Joseph Gould, the surveyor, and others, in the pasture, engaged in running the line ; that he spoke to Joseph Gould, and Joseph Gould came to him ; that it was after eleven, or nearly noon, when he was there ; that in summer a passenger train for Montreal left about twelve, M., but that, if that train had not then begun to run, (about which he did not remember) the last train for Montreal would have been the one leaving the evening before ; that he saw nothing of Ira Gould there.

Plaintiff then offered to show by this witness that a telegram was then sent by Joseph Gould to Ira Gould at Montreal, and that a telegraphic answer was received very soon, purporting to come from Ira Gould, and to be sent from Montreal.   The court excluded the evidence, and plaintiff excepted.

Verdict for defendant, which the plaintiff moves to set aside on account of the rejection of the above evidence.

Ordered that the questions of law arising on the case be reserved, and assigned to the law term.

*Fletcher & Haywood* for plaintiff.

*Ray & Ladd* for defendant.

SARGENT, J.   In *Connecticut* v. *Bradish*, 14 Mass. 296, a letter was admitted, as evidence against a party, where there was no evi-

dence of the handwriting, except the testimony of a witness that it was the same he had received in reply to a letter which he had addressed to the same party, and this ruling was sustained. The same doctrine is held in 1 Greenl. Ev. sec. 578, and cases cited. *Johnson* v. *Daverm*, 19 Johns. 134; *Chaffee* v. *Taylor*, 3 Allen 598.

Now it is claimed that, as in case of a letter, so in case of a telegraphic despatch, the person who answers a despatch is so generally and uniformly the person to whom the communication was addressed that it may be safely acted upon, and that it is thus acted upon in all the business arrangements of the country.

But there is a difference in principle between the two cases—the letter received in reply to a written communication, and the despatch received in reply to the same communication sent by telegraph.

Telegraphic messages are instruments of evidence for various purposes and are governed by the same general rules which are applied to other writings. If there be any difference, it results from the fact that messages are first written by the sender, and are again written by the operator at the other end of the line, thus causing the inquiry as to which is the original.

The original message, whatever it may be, must be produced, it being the best evidence; and in case of its loss, or of inability to produce it from any other cause, the next best evidence the nature of the case will admit of must be furnished. If there was a copy of the message existing it should be produced, if not then the contents of the message should be shown by parol testimony. Scott and Jarnagan on Telegraphs, sec. 340, 341. Many cases are cited in the above work from which it is held, that in all controversies between the sender of the message, and the company, the original message is the one left at the office by the party sending it; but where a man sends a proposition to another man by telegraph and gets a reply accepting the offer, the original message, so far as binding the acceptor is concerned, is the copy delivered to him at the other end. The message as communicated to the acceptor and his reply as delivered to the operator to be returned, are what would govern in construing the contract, provided both parties voluntarily and of their own accord sent their messages by the telegraph and thus adopted the company as their agent.

So when a contract is made by telegraph, which must be in writing by the statute of frauds, if the parties authorize their agents either in writing or by parol, to make a proposition on one side and the other party accepts it through the telegraph, that constitutes a contract in writing under the statute of frauds; because each party authorizes his agents, the company or the company's operator, to write for him; and it makes no difference whether that operator writes the offer or the acceptance in the presence of his principal and by his express direction, with a steel pen an inch long attached to an ordinary penholder, or whether his pen be a copper wire a thousand miles long. In either case the thought is communicated to the paper by the use of the finger resting upon the pen; nor does it make any difference that in one case common record ink is used, while in the other case a more subtle fluid, known as electricity, performs the same office.

In the case before us, suppose Gould was in Montreal at the time, and suppose he wrote an answer to the message that was sent him, that answer, if produced, might show his handwriting, and if furnished to the operator without his having any knowledge of the person, might be evidence of the handwriting of Gould, according to the rule of evidence first above stated ; but when that paper is copied by another, and forwarded to its destination, that copy cannot be evidence of anybody's handwriting, because it is not sent in writing but by certain signs, understood between the operators, by which the operator at Northumberland is informed by the other operator what the message is, and he then writes down on paper what has been communicated to him by the other operator, and this copy is passed to the person to whom it is directed. It will be seen at a glance that there is nothing about the handwriting here that could indicate that the message came from Gould, nor is there anything in the case to make this message evidence any more than there would be if Gould had sent a verbal message by one man who had communicated it to another, and the latter had, at length, conveyed the message to the party for whom it was designed and to whom it was originally sent.

This message might be received as it was sent, and would ordinarily be acted on in the business of life, but the only way to prove such a message in a court of law would be to summon both the intermediate agents or bearers of the message, and in that way to trace the message from the lips of the one party until it was received in the ear of the other party. Anything short of that would be to rely upon hearsay evidence of the loosest character.

In *Matteson* v. *Noyes*, 25 Ill. Rep. 591, Walker, J., in delivering the opinion of the court, says : " On the trial below appellee offered and the court admitted in evidence what purported to be a telegram from the appellant to Loren Darling. There was no evidence that it was the original, or that the original had been lost or destroyed or could not be produced, or that the paper offered was a copy. It was simply offered and admitted as the despatch which was received by the witness from the telegraph office and as primary evidence. It is an elementary principle that a resort must always be had to the best evidence in the power of the party by which the fact is capable of proof, and it is an inflexible rule that, if it is in writing, the original must be produced unless it be shown that it is destroyed, or not within the power of the party to produce it, before secondary evidence can be received of its contents. And before a copy of a written instrument can be admitted, a sufficient foundation must be laid by preliminary proof of destruction or absence. In this case no such proof was made to justify the reception of this copy in evidence.

We know that by the admirable system regulating the government of the telegraphic companies, the original despatch is preserved and may be at all times procured for the proper purposes. The paper filed at the office from which the message is sent is of course the original, and that which is received by the person to whom it was sent purports to be a copy. If the despatch is sought to be used in evidence the original

must be produced and its execution proved precisely as any other instrument, or its absence accounted for in the same mode, before the copy can be received. Whilst we know that the operators employed by the company are unusually accurate and reliable in the mode of doing business, still they do not act under the sanction of an oath, and even if they did, a copy coming from the office where delivered must be proved to be a true and compared copy, before it can be admitted in a proper case. For these reasons we are clearly of opinion that the court below erred in admitting this despatch without the requisite preliminary proof."

There is also an authority cited in Scott & Jarnagan, *supra*, from the 18th Upper Canada Rep. (Q. B.) 60. *Kinghorn* v. *The Montreal Telegraph Co*. where Robinson C. J., in delivering the opinion of the court, says: "We must look, I think, in the case of each communication, at the papers delivered by the party who sent the message, not at the transcript of the message taken through the wire at the other end of the line, with all the chances of mistake in apprehending and writing the signals, and in transcribing for delivery."

These cases seem fully to apply to this case. There is a class of cases in which contracts have been made by telegrams, where, for the purpose of showing what the contract was, the message that was delivered to the person addressed, and the answer of acceptance as delivered for transmission were considered the originals; such are *Dunning & Smith* v. *Roberts*, 35 Barb. 463; *Trevor & Colgate* v. *Woods*, 36 N. Y. 307, and *Durkee* v. *Railroad Co*., 29 Vt. 127, in which last case Redfield. J., in delivering the opinion of the court says: "In regard to the particular end of the line where inquiry is first to be made, it depends upon which party is responsible for the transmission across the line, or in other words, whose agent the telegraph company is. The first communication in the transaction, if it is all negotiated across the wires, will only be effective in the form in which it reaches its destination. In such case inquiry should be made for the despatch delivered. In default of that its contents may be shown by the next best proof."

But these cases do not change or affect the doctrine so far as it is applicable to this case, because here the original answer delivered by Gould must be the one to be regarded as the original, so far as proof of handwriting is concerned, no matter in what form the message was received at the other end.

But let us suppose that in this case Gould's reply was merely verbal and was thus forwarded to the operator, where would be the proof of handwriting?

Could the fact that one operator told another operator by some signals which the latter could understand, that Gould had made a communication to him, stating what it was, be competent evidence that such message was the genuine communication of Gould?

The last operator who delivered the message and who writes it down as he receives it, would not be competent to prove that it came from Gould; all he knows about it is what the first operator told him. It is all hearsay and incompetent to prove the fact which is desired to be proved.

The ruling at the trial was correct and there must be

*Judgment on the verdict.*