AMEROP TRAVEL BUREAU, Plaintiff, *v.* POSTAL TELEGRAPH CABLE COMPANY, Defendant.

Municipal Court of New York, Borough of Manhattan, Ninth District, February 15, 1933.

*George F. Handel* [*Joseph R. Kelly* of counsel], for the plaintiff.

*O'Brien, Boardman, Conboy, Mamhard & Early* [*F. W. H. Adams* of counsel], for the defendant.

LEWIS, DAVID C., J.   On May twelfth plaintiff placed with the defendant at the city of New York a night letter for transmission to one Comer, Macon, Ga., quoting a price of *$1,080* net per person for a party of ten for a foreign tour.

This night letter was received by the addressee reading: *$1,008* net per person (instead of *$1,080*).

On May fifteenth the addressee telegraphed her response, reading: " * * * Price quoted in telegram of May 12th satisfactory. Accept for European trip.   Am writing."

On May sixteenth the addressee, Comer, received a letter from the plaintiff (which had been mailed on May fourteenth) stating: " We beg to confirm our wire of May 12th," and stating, in the body of the letter, that the price offered by the plaintiff was *$1,080* per person.

On May seventeenth the addressee again telegraphed the plaintiff: " Your night letter May 12th received May 13th.   Portion relating to my tour reads as follows: ' $1,008 net for party of ten.' * * *

" Wired May 15th accepting above terms.   Am willing to trade with you at this price.   Company with whom I have done business last four years are bidding a price comparing favorably with your price of $1,080 offered in letter received May 16th, as they are anxious to retain my business.   Ten have paid deposits.   I am ready to close trade at price $1,008 quoted May 12th and percent details."

The error occurring in the telegraphic transmission was further specifically corrected in a letter of May eighteenth from the plaintiff to the addressee, which requested the addressee's definite advice as to the acceptance of the higher price.

After some further correspondence between the parties, the upshot of the matter was that the plaintiff decided, as a practical proposition and policy, to go ahead at the lower figure, in order to keep the business from a competitor.

Upon this state of facts the plaintiff rests its right to recover the difference between the correct price of $1,080 per person and the incorrect quotation of $1,008 per person; subject to the clause of special limitation of $500 for ordinary negligence.

The telegraph company is not an insurer of accurate transmission. But a *prima facie* case of negligence is established by proving the delivery to the company of a message and the delivery by it to the addressee of an erroneous or inaccurate transmission.   A breach of

contract establishes the cause of action. (*Pearsall* v. *Western Union Tel. Co.*, 124 N. Y. 256, 265.)

The failure to transmit a message in the form in which it is received is *prima facie* evidence of negligence, for which the company is liable. (*Rittenhouse* v. *Independent Line of Telegraphs*, 44 N. Y. 263.)

Did the telegraph company serve as an independent contractor, or did it act as an agent?

The determination of the relationship would decide the respective rights of the sender and sendee, and the measure of responsibility of the telegraph company.

The defendant is a public service corporation; it serves the people at large. When one presents a message to it for transmission, the original writing is not conveyed. An electrical transmission carries the printed word, which is transcribed at the receiving station, and in that form is delivered to the addressee.

The telegraph company may be likened to the ordinary common carrier, in the sense that, when one transports merchandise, it transmits messages. But that is the full extent of the similarity.

A person deals with the telegraph company as an independent contractor. He does not employ it as a servant.

It is the message that the sender places with the company — not any different message that the company may deliver to the addressee — that constitutes the commitment of the sender. To insist that any one, by simply placing a message with the telegraph company for transmission — and nothing more — became bound by or responsible for the independent acts or conduct of the company, is as unsound as holding that any one depositing a letter in the United States mail box constitutes the government a general agent with power to alter or amend the terms or the text of his letter.

If error occurs in the course of communication, it may constitute a liability. It cannot constitute a contract. One is produced by mutual agreement. The other is the product of a breached duty.

" The nature of the undertaking by a telegraph company suggests the possibility, if not the probability, of peculiar risks affecting it, whether in the one, or the other, way " (*Halstead* v. *Postal Tel. Co.*, 193 N. Y. 293, 300).

" The question in this case must be, what legal relation did the defendant sustain to the plaintiffs; or what was the measure of the duty owing by the defendant and of its responsibility for a failure in performance? Was the duty an absolute one, as claimed by

the appellants; or was the undertaking one within the terms of the contract with the sender? In my opinion, the contract was binding upon the appellants, and relieved the defendant of any liability beyond that stipulated for (p. 300).

" The defendant, while it may be likened to a common carrier, in its occupation of conveying messages from, and to, all persons, unlike a common carrier of goods, does not become an insurer' in their transmission. Its duties are performed in a different way. The reasons for making common carriers of goods insurers of their value do not apply in the case of telegraph systems; for there is no custody of goods, and the conveyance of messages is subject to the contingencies of extraneous disturbances beyond the control of the telegraph owner, or to the fallibility of operators in transcribing by signals, or symbols, or in comprehending the message itself as written " (p. 302).

The parties must be held cognizant of the opportunity for error in transmission, yet mindful of the opportunity to avoid mistake by having a message repeated, if they desire that precaution. If they prefer to take the chances, that is their privilege. The election is theirs, not the company's.

Also, all parties deal with the telegraph company, chargeable with a knowledge of the law, and are bound accordingly.

Nothing in the conduct of the parties to this transaction invites a contrary conclusion.

Their acts must be interpreted according to their legal significance.

Nor does the sender possess any legal right to elect itself bound by the erroneous offer delivered to the addressee; and by so doing, hold the company for the consequences.

Nor is the addressee obligated by the acceptance of an error. Neither nor both could by such action establish a different contract than would have been constituted by the transmission of the correct offer and its acceptance; and thereby enlarge the responsibility of the company.

It is the view in many jurisdictions that the telegraph company does not act in the capacity of an agent for the sender, but only as an independent contractor, undertaking to transport the message. And that it is to be treated in the light of a common carrier (except relieved of the liability of an insurer), and in that capacity answerable to both sender and sendee, but only within the limits of the law. (*Western Union Tel. Co.* v. *Cowin & Co.*, 20 F. [2d] 103; *Joynes* v. *Postal Tel. Co.*, 37 Penn. Sup. Ct. 63; *Shingleur* v. *Western Union Tel. Co.*, 72 Miss. 1030; 18 So. 425; *Western Union Tel. Co.* v. *Anniston C. Co.*, 59 id. 757; *Postal Tel. Co.* v. *Schaefer*, 110 Ky. 907.)

In the case at bar we are not concerned with an order or instruction to a broker, employee or agent to buy, or sell or ship. We are considering an offer transmitted on behalf of the plaintiff to an independent party.

If the parties could not be held to the fulfillment or performance of any contract, how can the telegraph company be held for damages computed on the theory of the breach of a non-existing contract?

The plaintiff must be relegated to its claim for the actual damages sustained as a direct consequence of the defendant's neglect. It is not possessed of the right to reimbursement for the difference between the price quoted to the addressee and the price stated in the original message placed by the sender with the company for transmission.

The plaintiff banks its right to recover upon the authority of *Dunning* v. *Roberts* (35 Barb. 463).

The *Roberts* case presents exceptional circumstances.

In that case the Court of Appeals plainly emphasizes the personal participation of the defendant in the acts of negligence. And it is to be observed that the transmitter of the message was selected by the sender personally, and that the transmitter was not an employee of the telegraph company.

" As a general rule, he who employs an agent shall lose by his fraudulent, negligent or illegal act, in preference to an innocent third person. By employing him he warrants his competency, fidelity and good conduct in all matters within the scope of his agency. *In this case the defendant put Edwin in motion, and superintended his action in person, thus clothing him with actual as well as apparent, authority.*" (Italics mine.) (*Dunning* v. *Roberts, supra.*)

The particular features and facts of that citation tend to mark it as an exception, rather than to make it the rule. The only damage the plaintiff here seeks to recover, and the only damage it sought to prove, was the difference between the correct price and the incorrect quotation.

This damage could not be recovered. It was not chargeable against the defendant as the direct consequence of its acts, and it did not constitute the actual loss sustained thereby. At the most, it represented a loss voluntarily and independently assumed by the plaintiff.

" The cardinal rule undoubtedly is, that the one party shall recover all the damages which [have] been occasioned by the breach of contract ·by the other party. But this rule is modified in its application by two others. The damages must flow directly and

naturally from the breach of contract, and they must be certain, both in their nature and in respect to the cause from which they proceed. Under this latter rule, speculative, contingent and remote damages, which cannot be directly traced to the breach complained of, are excluded. Under the former rule, such damages are only allowed, as may fairly be supposed, to have entered into the contemplation of the parties when they made the contract, as might naturally be expected to follow its violation " (*Leonard* v. *New York, etc., Tel. Co.*, 41 N. Y. 544, at p. 566).

" I think, a more precise statement of this rule is, that a party is liable for all the direct damages, which both parties to the contract would have contemplated as flowing from its breach, if, at the time they entered into it, they had bestowed proper attention upon the subject, and had been fully informed of the facts " (p. 567).

For the reasons recited, the complaint must be dismissed, without prejudice.