THE MERCHANTS' BANK OF CANADA, Respondent, *v.* DE GRASSE LIVINGSTON, Impleaded, etc., Appellant.

A blank transfer of a certificate of stock with irrevocable power of attorney to transfer, signed by the person who appears by the certificate to be the owner, does not confer upon the holder apparent authority as agent for such owner to pledge the stock as collateral.

Defendant L. delivered to defendant B. a certificate of stock as collateral for a loan of $3,000; B. applied to W., plaintiff's agent, for a loan thereon of $8,000, stating that he wanted it for a client. W. agreed to make the loan if B. would procure a proper power of attorney, to be attached to the certificate. B., by representing that he ought to have the instrument to secure his loan, procured from L. a transfer and irrevocable power of attorney to make a transfer executed in blank. B. filled up the blanks, save the name of transferree and attorney, and delivered it with the certificate to W., who thereupon made the loan. B. had no authority from L. to borrow or to pledge the stock. In an

action to foreclose plaintiff's alleged lien upon the stock, *held*, that as B. did not claim to be the owner of the stock, but only to be acting as agent for the owner, and as he had in fact no authority or apparent authority so to act, L. was not estopped from asserting his title to the stock, and plaintiff could not assert a lien save at most for the amount for which the stock was pledged to B.; that while the transfer and power of attorney gave to B. an apparent ownership in case he had claimed title, or an apparent authority to sell as agent, it did not hold him out as authorized to make a loan or to pledge the stock, or at most it only indicated that he could pledge the stock for an authorized loan.

*McNiel* v. *Tenth Nat. Bank* (46 N. Y., 325), distinguished.

(Argued June 13, 1878; decided June 21, 1878.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, affirming a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts appear sufficiently in the opinion.

*Henry H. Anderson*, for appellant. Plaintiff had sufficient notice to put it on inquiry. (*Holbrook* v. *N. J. Zinc Co.*, 57 N. Y., 623; *Angle* v. *N. W. Mut. L. Ins. Co.*, 92 U. S. R., 342.) Defendant Livingston could reclaim the certificate from any one but a *bona fide* holder, without notice. (*Ballard* v. *Burgett*, 40 N. Y., 314; *Bush* v. *Lathrop*, 22 id., 535; *Moore* v. *Metropolitan Bk.*, 55 id., 46; *Lawrence* v. *Maxwell*, 53 id., 23; *Kortright* v. *Cady*, 21 id., 343.) The rule governing transfers of commercial paper has no application to this case. (*Leitch* v. *Wells*, 48 N. Y., 613; *Moore* v. *Metropolitan Nat. Bk.*, 55 id., 49; *Goodman* v. *Simonds*, 20 Howard [U. S.], 343; *Greene* v. *Warwick*, 64 N. Y., 224; *Armour* v. *Mich. Cen. R. R.*, 65 id., 23; *Ballard* v. *Burgett*, 40 id., 314.) The rules applicable to mortgages and similar instruments are to be applied here. (*Shaw* v. *Spencer et al.*, 100 Marr., 382; *Driscoll* v. *West Bradley and C. M. Co.*, 59 N. Y., 101; *Ballard* v. *Burgett*, 40 id., 314; *Herring* v. *Hoppock*, 15 id., 409; affirmed in *Cole* v. *Mann*, 62 id., 1.)

*James Thomson*, for respondent.  The giving by Livingston of the power in blank to Barrett rendered him liable for all consequences as to third persons purchasing or advancing money in good faith.  (*Moore* v. *Metropolitan Nat. Bk.*, 55 N. Y., 41; *Isham* v. *Buckingham*, 49 id., 222; *Holbrook* v. *N. J. Zinc Co.*, 55 id., 623; *Leitch* v. *Wells*, 48 id., 585; *Johnson* v. *Underhill*, 52 id., 210; *McNeil* v. *Tenth Nat Bk.*, 46 id., 325; *Driscoll* v. *West Bradley and C. M. Co.*, 59 id., 101; *N. Y. and N. H. R. R. Co.* v. *Schuyler*, 17 N. Y., 592; *Com. Bk. of Buffalo* v. *Kortright*, 22 Wend., 362; *Gibert* v. *Manchester Co.*, 141 id., 627; *Fatman* v. *Lobach*, 1 Duer, 354; *Bk. of Utica* v. *Smalley*, 2 Cow., 770; *Armour* v. *Mich. Cen. R. R. Co.*, 55 N. Y., 123.)  There could be no claim of a want of good faith in this case.  (*McNeil* v. *Tenth Nat. Bk.*, 46 N. Y. 325.)  The stock certificate and power of attorney was a negotiable security, the title to which both legal and equitable vested in the holder.  (46 N. Y., 325; *Leitch* v. *Wells*, 48 id., 585; *Backhouse* v. *Harrington*, 5 B. & Ad., 1098; *Goodman* v. *Harvey*, 4 A. & E., 870; *Magee* v. *Badger*, 34 N. Y., 274; *Colson* v. *Arnott*, 55 id., 270; *Chapman* v. *Rose*, 56 id., 140; *Woolford* v. *Bk. of America*, 10 Bush. [Ky.], 506, 515; *State Bk.* v. *McCoy*, 69 Pa., 204; *Angle* v. *N. W. Mut. L. Ins. Co.*, 2 Otto [U. S.], 341, 342; *Welch* v. *Sage*, 47 N. Y., 143.)

EARL, J.  This is an action to foreclose a pledge of certain shares of stock in the Adams Express Company.

Some time prior to January, 1875, the defendant, Livingston, being the owner of 100 shares of such stock, delivered the certificate thereof to the defendant, Barrett, to secure a loan from him of about $3,000.  In January, 1875, Barrett took the certificate of stock to one Watson, the resident manager of the plaintiff, in the city of New York, and told him that he wanted to get a loan of $8,000, from the plaintiff, upon the stock represented by the certificate, for one of his clients, who did not wish to sell the stock, but would rather hold it.  The certificate was then in the name of Liv-

ingston, but there was no indorsement upon it nor power of attorney attached to it. Watson informed Barrett that if he would bring a proper power of attorney attached to the certificate, he would make the loan. Thereafter Barrett, by representing that he ought to have the instrument to secure his loan of the $3,000, procured Livingston to sign a printed blank transfer and irrevocable power of attorney to make a transfer of such certificate. Barrett then again took the certificate of stock and the power of attorney signed by Livingston, filled up, except the name of the transferee and attorney, to Watson, and delivered them to him, and received a check for $8,000, payable to his order, upon which he drew the money. He subsequently, in the same way, borrowed, upon the security of the stock, as he represented for his client, $1,000 more. He afterward absconded and never paid any of the money to Livingston ; and he was not authorized by Livingston to borrow it or pledge the stock. It has thus far been decided in this case that the plaintiff is entitled to the stock for the security of the loan made by it ; and the decisions have been based upon the authority of *McNeil* v. *Tenth National Bank* (46 N. Y., 325), and other similar cases.

It was held in those cases that a blank transfer of a certificate of stock, with irrevocable power of attorney to transfer, signed by the person who appears by the certificate to be the owner, like that used in this case, confers upon the holder of the certificate and power of attorney the apparent legal and equitable title to the stock, and that a *bona fide* purchaser of such stock from such holder can hold the stock against the real owner, who is estopped from asserting his title. The principles upon which those cases rest are fully set forth in the case of *McNeil* v. *Tenth National Bank*, and need no further elucidation here. In such cases the apparent owner, in his dealings with persons, relying in good faith upon the appearances, is the real owner and may sell or pledge the stock and deal with it in all respects just as the real owner could. But in that case and the other similar

cases the holder claimed to be just what the appearances indicated — the real owner — and to deal with the stock as such.

But this case is distinguishable from those. Barrett did not claim to be the owner of the stock. He represented that it belonged to his client, and by that must have been understood to mean Livingston, whose name appeared in the certificate as the owner of the stock; and he represented that he wanted a loan for this client. He had no authority, in fact, to make the loan for him, and he had nothing to show that he had such authority. He was clothed with no apparent authority to make such loan. The power of attorney gave no such apparent authority. There was nothing in that showing any connection with a loan, and that added nothing to his apparent authority. All the plaintiff had then, when it made the loan, was the naked assertion of Barrett that he was acting for Livingston; and upon that assertion it relied at its own risk. It could not hold Livingston for the loan; and this being so, what right had it to take and hold Livingston's stock? Knowing that the stock did not belong to Barrett, it could not take it as security for a loan to him. It, at most, had information that Barrett could only pledge the stock for a loan to Livingston; and if he was not authorized to make the loan, he was not authorized to make the pledge. At the very most, the appearances indicated that Barrett was authorized to pledge the stock for an authorized loan, but not for a loan which he was not authorized to make.

In such a case, the doctrine of estoppel does not apply. Livingston did not hold Barrett out as authorized to borrow money for him; and hence he is not estopped from denying such authority. He did not hold him out as authorized to pledge his stock for such a loan; and hence he is not estopped from disputing the pledge.

If Barrett had gone to the plaintiff with the certificate and power of attorney, claiming to own the stock, he could have pledged it for a loan to himself or any other person.

If he had been authorized by Livingston to borrow the money, he could probably have pledged the stock in his possession to secure it. And he could have taken the certificate and power of attorney and gone into the market, claiming to act as the agent of the plaintiff, and have sold the stock and given a good title. The possession of the certificate and full power of attorney would have given him the apparent authority to sell. But a power to sell is not a power to pledge to secure money borrowed. An agent to sell is not agent to pledge. (Story on Agency, § 78; *Henry* v. *Marvin,* 3 E. D. Smith, 71; *Banito* v. *Mosquera,* 2 Bosw., 401.)

It may be that Barrett transferred to the plaintiff all the interest he had in the stock as pledgee of Livingston; and whatever that was may be protected upon another trial.

The judgment must be reversed, and there must be a new trial, costs to abide event.

All concur, except ANDREWS, J., not voting; MILLER, J., concurring in result.