JOHN F. TALMAGE, Respondent, *v.* THE THIRD NATIONAL BANK OF THE CITY OF NEW YORK, Appellant.

M. & Co., who were brokers and agents for H., having authority from her to pledge certain stocks belonging to her for a loan of $35,000, made a contract with defendant for the loan, giving their own note therefor, secured by pledge of the stock.  Defendant knew that the loan was for H., and was to be used to pay for a portion of the stocks, and that the stocks belonged to her. In an action for an alleged conversion of the said stocks defendant claimed the right to hold the same as security for other loans made by it to M. & Co.  *Held* untenable ; that defendant had no right to assume that M. & Co. had authority to make other loans, at least, in the absence of any statement that the subsequent loans were made for the benefit of H., and this although M. & Co. had a power of attorney absolute on its face.

Plaintiff tendered, before suit was brought, the $35,000 and interest, and on this being refused tendered $46,000.  *Held,* that this was not conclusive as an admission that defendant had a lien for the latter sum ; and that defendant was not entitled to a deduction of that amount from the value of the stocks, but only of the amount of its lien.

An action in the Supreme Court against a National bank need not be brought in the county where the bank is located, but may be brought in any county where the plaintiff resides.

*Hagadorn* v. *Raux* (72 N. Y. 586) ; *Casey* v. *Adams* (102 U. S. 66), distinguished.

(Argued February 8, 1883 ; decided March 6, 1883.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an or-

der made September 12, 1882, which affirmed a judgment in favor of plaintiff, entered upon a verdict, and affirmed an order denying a motion for a new trial. Also, appeal from order of said General Term, made at the May term, 1882, affirming an order of Special Term, denying a motion to change the place of trial from the county of Kings to the county of New York. (Reported below, on appeal from order changing place of trial, 27 Hun, 61.)

This action was brought to recover damages for the alleged conversion of certain stocks.

The material facts are stated in the opinion.

*S. P. Nash* for appellant. As Julia G. Hunt, under whom plaintiff claims, delivered the stocks sued for to Moller & Co., with blank transfers and powers of attorney which enabled them to invest a holder with a perfect title, and also gave them express authority to use the stocks as security for money to be borrowed by them, any private understanding, therefore, with Moller & Co., as to the sum they were authorized to borrow did not affect the defendant. (*F. & M. B'k* v. *B. & D. B'k,* 16 N. Y. 125; *N. Y. & N. H. R. R. Co.* v. *Schuyler,* 34 id. 30, 66–68; *People* v. *B'k of N. A.,* 75 id. 547, 562; *Merchs.' B'k* v. *Livingston,* 74 id. 223, 227.) Plaintiff was estopped by the tender of $46,000, under the note of Nov. 29, from claiming that only $35,000 was due. (*Eaton* v. *Wells,* 82 N. Y. 576.)

*William N. Dykman* for respondent. The action was properly tried by the Supreme Court in Kings county. (Code of Civil Procedure, § 3343; *L. R. R. Co.* v. *Leston,* 2 How. 497; *Marshall* v. *B. & O. R. R. Co.,* 16 id. 314; *Covington, etc., Co.* v. *Shepperd,* 20 id. 227; *O. & M. R. R. Co.* v. *Wheeler,* 1 Black, 286; U. S. R. S., § 5136, subd. 4; id., § 5198; *N. O. Nat. B'k* v. *Adams,* 3 Woods, 21; *Cooke* v. *State N. B'k,* 52 N. Y. 109; *Robinson* v. *N. B'k of Newberne,* 81 id. 387; *Brinkerhoff* v. *Bostwick,* 88 id. 55; *S. S. B'k* v. *S. C., etc., R. R. Co.,* id. 115; *Casey* v. *Adams,* 102 U. S. 66.) Mrs. Hunt or

her assignee may assert her ownership of these securities unless the bank honestly believed that Moller & Co. owned the stocks. (*Merchants' B'k* v. *Livingston*, 74 N. Y. 223; *Gould* v. *F. L. & T. Co.*, 23 Hun, 322; *McNeil* v. *Tenth Nat. B'k*, 46 N. Y. 325.) When Moller and Mr. Booth attempted to fasten other liens on Mrs. Hunt's stocks they were equally dishonest, and equally violated trust relations, for a pledge is a bailment and bailment is a trust. (Story on Bailments, § 2.) The plaintiff was entitled to have a verdict directed for the full value of the stocks. (*Kortright* v. *Cady*, 21 N. Y. 348; *Haskins* v. *Kelly*, 1 Robt. 160; Tyler on Pawns, 551; *Lawrence* v. *Maxwell*, 53 N. Y. 23.) The tender of $46,000 is not conclusive upon plaintiff that defendant's lien was valid to that amount. (*Astley* v. *Reynolds*, 2 Strange, 915; *Harmony* v. *Bingham*, 12 N. Y. 99, 109, 116; *Briggs* v. *Boyd*, 56 id. 289; *Scholey* v. *Mumford*, 60 id. 498.)

Miller, J. The stocks to recover the value of which this action was brought, were originally pledged as collateral security for a loan made by the defendant to Moller & Co., for the benefit of Julia G. Hunt, the plaintiff's assignor. They were afterward used to secure moneys loaned to Moller & Co., on their own account by the bank. Moller & Co. were the brokers and agents for Mrs. Hunt, and the question to be determined is whether the defendant, the bank, had knowledge that they were loaning to Mrs. Hunt and receiving her stocks in pledge for the sum of $35,000 only, and that Moller & Co. were her agents and not the owners of the stocks. (*Merchants' Bank* v. *Livingston*, 74 N. Y. 223; *McNeil* v. *The Tenth Nat. Bank*, 46 id. 325; 7 Am. Rep. 341.) This question was one of fact which was left to the consideration of the jury, under the charge of the court, and the jury found in favor of the plaintiff. It appears that the stocks were delivered to Moller & Co., as agents of Mrs. Hunt, with authority to use the same for the purpose of procuring the loan first made thereon, and unless the defendant was advised as to the character and extent of the agency, it should not be held liable. Certain stocks had been

purchased by Moller & Co. for Mrs. Hunt, and they gave their notes with the stocks as collateral, and received the money to pay for the stocks so purchased. There was proof to show that Moller went to the president of the bank and made the loan of $35,000 with him, stipulating at the time that it was Mrs. Hunt's stock, and that it was desired to give sufficient margin so that there would be no inconvenience, as she was about going abroad, and also stipulating that the loan should not be disturbed. Although this testimony was contradicted the jury found a verdict for the plaintiff, which must be regarded as conclusive as to the notice to, and knowledge of, the defendant unless there is some valid and legal ground for disregarding the same. The appellant's counsel claims, that the defendant had no knowledge of the limitation by Mrs. Hunt to her agent to borrow only $35,000; that Moller & Co. were authorized to carry and take care of the stocks and that she conferred authority upon them, and they had a right as general agents to sell the stocks or to borrow money upon them. We think this position cannot be sustained. If they had knowledge, as is established, if the fact that the loan was to be made for the specific amount of $35,000, and for a special purpose, as was proved, the inference is the loan was made and the stocks were to be used for that purpose alone; the defendant had no right to assume that Moller & Co. had any authority to make other loans with any other object in view, certainly not without some explanation or statement that the subsequent loans were made for the benefit of Mrs. Hunt. It is not claimed that such was the case. Acting under the original agreement as to the loan there is no ground whatever for claiming that any subsequent loan was in pursuance thereof. It is true that it is said in *Merchants' Bank* v. *Livingston* (74 N. Y. 223), the broker "had no authority to make the loan at all," but although such may be the case, we are unable to see how this can make any difference where the authority is limited, and the limitations made known to the lender, as was the case here. Upon no sound principle can it be maintained that the lending of a specific amount of money, on collaterals to a broker or agent

under special arrangements, confers authority upon the agent or broker to make future loans which have no relation to such arrangements and no connection with the original loan. Even if it be conceded that Mrs. Hunt intrusted Moller & Co. with the securities and authorized them to make the loan in their name and upon their own obligation, and sanctioned the terms of such obligation as they might execute, inasmuch as the bank understood, as the verdict of the jury indicated, the amount of the loan which was to be made upon the securities offered, that it was for a specific purpose, and that no more than that amount was to be required on the securities, there is no ground for claiming that the stocks were subject to the general banker's lien for all moneys borrowed by the brokers from the bank. The arrangement made, and the circumstances attending it, which were known to the bank, precluded it from claiming any right to such a lien. It cannot fairly be claimed that Mrs. Hunt received the money loaned upon any such terms or with any knowledge or understanding that the securities pledged were subject to any lien of the bank for any other moneys loaned to her broker. She conferred no authority upon her agents for this purpose; she had no knowledge of any such lien beyond $35,000, and as the bank understood the arrangement that that amount only was to be loaned on the securities, there is no valid ground upon which she should be held liable. The question whether the bank was entitled to a general lien depended upon the fact whether it had notice that Mrs. Hunt was the owner of the stocks and that they were pledged as collateral only for the loan of $35,000. This was a question for the jury to determine upon all the evidence in the case and, therefore, the motion to dismiss the complaint upon this ground was properly denied. Plaintiff before suit brought on demanding securities tendered $35,000 and interest, and, this being refused, tendered $46,000, which was also refused.

The request to charge that the tender of $46,000 was an admission that that amount and interest was a proper claim of the bank upon the stocks was properly refused. We think

that the tender was not conclusive upon the plaintiff as admitting that the defendant had a lien upon the stocks for that amount. It was made with a view of arranging the controversy without litigation, and the principle is well established that concessions made for the purpose of securing a settlement of the controversy cannot operate to the prejudice of the party making them. Where a tender is made, for the purpose of obtaining property of the owner, sold and in the hands of the tenderee claiming to own the same, and accepted, the money paid may be recovered back. (*Briggs* v. *Boyd*, 56 N. Y. 289; *Scholey* v. *Mumford*, 60 id. 498.) Upon this principle the tender made may be regarded the same as if the money had actually been paid, and cannot be available as a defense to the plaintiff's action. Such a tender is not an estoppel, and the case of *Eaton* v. *Wells* (82 N. Y. 576) has, we think, no application. For the reasons last stated the request to charge, that the $46,000 and interest should be deducted from the value of the stocks, was also properly refused.

We think it very clear that if the bank had knowledge at the time they made the loan of $35,000 that the brokers were acting as agents for Mrs. Hunt, and that Moller had no authority as agent for Mrs. Hunt except to make the loan for that amount, the power of attorney given to the brokers, although absolute on its face, did not authorize a loan beyond the $35,000.

The judgment should be affirmed.

The record in this case also brings up for review an appeal from an order of the General Term, affirming an order of the Special Term, denying a motion to change the place of trial. It appears from the motion papers that the plaintiff in this action resides in the county of Kings and the defendant is located in the city and county of New York; the place of trial named in the complaint is the county of Kings, and the question presented upon this appeal is whether a National bank can be sued in the Supreme Court of this State out of the county where it is located. This question involves the construction to be placed upon various provisions of the U. S.

Revised Statutes. By section 5136, subdivision 4, it is declared that a duly organized National bank shall have power: "To sue and be sued, complain and defend in any court of law and equity as fully as natural persons." By section 5198 as originally enacted it was provided, "the taking * * * a rate of interest greater than is allowed * * * shall be deemed a forfeiture of the entire interest * * *. In case the greater rate of interest has been paid, the person by whom it has been paid * * * may recover back in an action in the nature of an action of debt twice the amount of the interest thus paid from the association taking or receiving the same, provided such action is commenced within two years from the time the usurious transaction occurred." This section was amended in 1875 by adding as follows: "That suits, actions and proceedings against any association under this title may be had in any Circuit, District or Territorial Courts of the United States held within the district in which such association may be established, or in any State, county or municipal court in the county or city in which said association is located, having jurisdiction in similar cases."

Section 5198, *supra*, as it was before this amendment, related to actions for forfeitures and penalties for taking a greater rate of interest than is allowed by law to National banks, and there is some ground for claiming that this amendment was to be limited and confined to cases where actions were brought against National banks for penalties under the law cited. Such a construction would be consistent with the provisions of section 5136, which relates to suits brought by and against National banks. The amendment was without doubt intended to give jurisdiction to State courts, in suits for usury penalties, which previously did not exist, and was confined to the courts of the United States. (See U. S. R. S., § 711, subd. 2.) It will be noticed that the amendment in question uses the word "may," thus indicating that it was not intended to be imperative or compulsory, or in any way inconsistent with the provisions of section 5136, which declares that these banks may "sue and be sued, complain and defend in any court of law or

equity as fully as natural persons." It is true that in the construction of statutes the word "may" is sometimes construed as meaning "must," in order to carry out the intention of the framers and the object of the law. But such a construction in this case might lead to great practical inconvenience and would be evidently inconsistent with the object of the provision in question; it would confer special rights and privileges on these institutions and compel parties who had claims against them to bring suits in the location where they were situated and subject them to great expense and unnecessary trouble. This might act as a very great hardship in cases where actions might be brought in favor of one of these institutions, located at a distance from the other sued. This could never have been intended, and the evident purpose of the amendment was to give authority to sue these institutions in the State court, if it did not previously exist under section 5136.

We think it is also a legitimate construction of the provision of the act that the words restricting the bringing of suits were confined to local courts, such as county courts and municipal courts, and not to the Supreme Court of the State, and that a party living in a county at a distance from a National bank has a right to bring an action in his own county against it for any lawful claim, subject to an application to change the place of trial for the convenience of witnesses in accordance with the practice of the court. The rule contended for by the appellant's counsel, that " if an affirmative statute which is introductive of a new law directs a thing to be done in a certain manner, that thing shall not, even although there are no negative words, be done in any other manner," has no application to the case presented by the appeal-book, and to the statute intended to regulate the proceedings of courts in reference to suits which it might be necessary to institute against corporations. It must be borne in mind that the statute in question was for the benefit of parties in the prosecution of their rights against banking institutions in the courts of the State where they were located, and was not an imperative provision for the purpose of restricting or limiting such right. The case of

*Hagadorn* v. *Raux* (72 N. Y. 586) is not in point, and the rule there laid down relates to the statute pertaining to public officers, which imposes duties upon them, which they have failed to perform, and is not applicable to this case. The case of *Casey* v. *Adams* (102 U. S. 66), cited by the appellant's counsel, does not aid him. The question there was a local question and the plea was to the jurisdiction. The effect of the statute on transitory actions was not expounded. It is, we think, adverse to the position of the appellant's counsel. The decisions of the courts of this State are in conformity to the views we have expressed, and language in statutes of a similar character is held to be permissive only. (*Cooke* v. *State Nat. B'k*, 52 N. Y. 109; *Robinson* v. *Nat. B'k. of Newberne*, 81 id. 387; 37 Am. Rep. 508.)

For the reasons stated the order should be affirmed.

All concur.

Judgment and order affirmed.