TRIPO KRSTOVIC, Respondent, *v.* CHARLES H. VAN BUREN and SAMUEL W. DAY, Copartners Doing Business under the Name and Style of C. H. VAN BUREN & COMPANY, Appellants.

Third Department, March 8, 1922.

Principal and agent — stockbroker maintaining office in Kingston appearing to be branch office of New York firm of brokers but conducting business under private agreement not to act as agent for said firm held to have acted as such agent in reference to transactions with plaintiff — firm liable for conversion of securities deposited by plaintiff as collateral and sold by firm without notice.

One Kline and the defendants, constituting the firm of C. H. Van Buren & Co., one or more of whom were members of the Consolidated Stock Exchange, entered into an agreement whereby Kline, not a member of the Exchange, should conduct an office for dealing in stocks at Kingston, N. Y. Under the agreement Kline was to pay the expenses of the office, hire the employees, keep his own bank account, and deal with customers in his own name and not as the agent of defendants, but was to buy and sell securities for his clients through the defendant firm. The account to be kept by said firm was to be an omnibus account, in which should be entered and carried in Kline's name all the items of purchases and sales through the Kingston office; no account was to be carried in the name of a client, and where securities were purchased on margin the margin of each client was to be deposited without distinction as collateral for this omnibus account.

The office was opened and business conducted pursuant to the agreement. On the door were the words: "John D. Kline, Broker. Correspondent C. H. Van Buren & Company, Member of the Consolidated Stock Exchange." Plaintiff was a client of the office and had with it a margin account to cover which he had delivered to Kline his collateral, consisting in part of securities assigned in blank. After a time the margin deposited by Kline to protect the omnibus account became insufficient and Kline failing to increase the deposit, the securities held in the omnibus account, including those of plaintiff, were sold by defendants, without notice to plaintiff, although plaintiff, apparently, had on deposit sufficient collateral to protect his own account.

In an action for the conversion of the securities, *held*, upon all the evidence, that the jury were justified in finding not only that the defendants by their acts knowingly held out Kline as authorized to act on their behalf in conducting the business or knowingly permitted Kline to so hold himself out, so that plaintiff could and did rely on such apparent authority, but also that Kline actually acted as defendants' agent in his transactions with plaintiff, and hence a recovery should be allowed.

APPEAL by the defendants, Charles H. Van Buren and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Ulster on the 1st day of June, 1921, upon the verdict of a jury, and also from an order entered in said clerk's office on the 22d day of May, 1921, denying defendants' motion for a new trial made upon the minutes.

*Sullivan & Cromwell* [*A. T. Clearwater* and *E. H. Sykes* of counsel], for the appellants.

*James Jenkins,* for the respondent.

VAN KIRK, J.:

The action is brought for the conversion of securities belonging to plaintiff, which were in the hands of the defendants and were sold by the defendants without notice to the plaintiff. John D. Kline and the defendants, constituting the firm of Van Buren & Co., a stockbrokerage firm, one or more of whom were members of the Consolidated Exchange, entered into an agreement by which Kline, not a member of the Exchange, should procure and open an office in Kingston, N. Y., in and through which customers should deal in stocks. Kline was to pay all the expenses of the Kingston office, hire all the employees, keep his own bank account, deal with customers in his own name and not as the agent of defendants, but was to buy and sell securities for his clients through the defendant firm; the account kept by Van Buren & Co. should be an omnibus account, in which should be entered and carried in Kline's name all the items of purchases and sales through the Kingston office; no account was to be carried in the name of a client, and where securities were purchased on margin account, the margin of each client should be deposited without distinction as collateral for this omnibus account. The office was opened and the business was conducted as between Kline and the defendants in compliance with this agreement and understanding. The plaintiff was one of the clients of the office and had with it a margin account in considerable amount and had delivered to Kline his collateral, a part of which consisted of securities assigned in blank. The time came when the margin which had been deposited to protect this omnibus account was insufficient. Repeated demands upon Kline were made by the

defendants. He failed to comply with the demand and the securities held in the omnibus account were sold, including the securities of this plaintiff and without any notice to this plaintiff. It does not appear that the plaintiff did not have sufficient margin to protect his account. The defendants carried no account on their books in the name of the plaintiff and of course had not credited his margin to protect him.

This case has been before tried. At the close of the evidence the court had dismissed the complaint. Upon an appeal this court reversed the judgment dismissing the complaint, saying: " Judgment reversed and new trial granted, with costs to the appellant to abide the event, on the ground that the evidence, including the correspondence between the defendants and Kline, presented a question for the consideration of the jury." (194 App. Div. 942.) The record upon this appeal contains all the evidence that was in the former record and considerable additional evidence. This court having held that the evidence upon the former trial presented a question for the jury, the sole question now before us is whether or not the new evidence has so changed the record that the verdict is against the weight of evidence.

The contract between Kline and the defendants was not an agency contract. By its specific terms Kline was not to be the agent or representative of the defendants. But this private agreement was never disclosed to the clients of the Kingston office. The trial court submitted to the jury this question. " If Kline was not acting for the defendants as their agent in conducting such brokerage business, but on his own account, did the defendants by their own acts knowingly hold out to the plaintiff that Kline was authorized to act on behalf of the defendants in conducting said business, or knowingly permit Kline to so hold himself out so that the plaintiff, in the exercise of reasonable prudence, could and did rely on such apparent authority in his transactions through said Kingston office? " The jury answered this question, Yes; and, if the evidence is sufficient to justify the answer, the judgment in this court must be affirmed. (*Johnson* v. *Jones,* 4 Barb. 369, 373; 2 C. J. 461.)

Of course the defendants were acquainted with the customs and practice in purchase and sale of securities on the Stock Exchange on margin account in all its details and the plaintiff had had a considerable experience in such transactions; his accounts with brokers had at times amounted to hundreds of thousands of dollars. The defendants were informed that Kline had been the manager of an office for Clark, Childs & Co., stockbrokers, in Kingston; that this office had been closed a short time

before the office was opened by Kline under his agreement with the defendants. On the door of the office was the legend: " John D. Kline, Broker. Correspondent C. H. Van Buren & Company, Member of the Consolidated Stock Exchange." There is considerable evidence in the case to establish what, in the understanding of Wall street, is meant by the word " correspondent." But we are inquiring as to the reasonable understanding of the client, not as to the technical meaning of words. A man of average intelligence would not understand the technical meaning as shown in the evidence and it is not a necessary inference that the use of this word would indicate that the relation between a stock-brokerage firm as correspondent of a local broker was other than that of agency. A direct wire was connected with the Kingston office and quotations were furnished with the consent of the Consolidated Exchange. Stocks could not be purchased and sold on the floor of the Exchange, except through a member thereof. The sign advertised to the patrons that Van Buren & Co. were the members of the Consolidated Exchange who purchased and sold securities for the clients of the office. When stocks are purchased on margin account, the securities are not taken in the name of the client, but of the firm which purchased, or of some person for their accommodation, the broker holding the collateral deposited as margin for the client's account. The defendants, knowing that their name was upon the door, that they were holding themselves out as the members of the Consolidated Exchange who purchased and sold stocks for the clients of the Kingston office, that the clients were not made acquainted with the private contract for self-protection which they had made with Kline, knew that every client had fair reason to believe, not being warned to the contrary, that he was dealing with a stock brokerage firm, members of the Consolidated Exchange, whose character and credit were vouched for by the Exchange. The defendants knew that this private contract, by which they should have nothing to do with the individual accounts of the clients, should carry the entire account of all clients as one account, in Kline's name, Kline to deposit the margin which clients had deposited with him, and by which, if Kline failed to deposit sufficient margin for the entire account, the securities belonging to an individual client would be sold without his knowledge that his account was in jeopardy, although he might have deposited sufficient margin to fully protect his account, was shamefully unfair to an honest client; that their name was being used as a lure to entice clients to this office and subject them to this risk far beyond the usual risk of margin trading.

The new evidence in this case is largely cumulative and simply supports a little more strongly the facts as disclosed upon the first trial. There is one bit of evidence, applying directly to this plaintiff, to which our attention is specifically called. The St. Louis and San Francisco railroad was being reorganized and terms and conditions had been agreed upon, under which a holder of securities in the company might participate in the reorganization and take new securities in place of the old. This plaintiff held some of the old securities and went to the defendants' office, where he saw the defendant C. H. Van Buren. The plaintiff had been at the defendants' office a number of times to talk about stocks and bonds. On the first occasion, when plaintiff asked him about the reorganization, Mr. Van Buren said: " The Guaranty Trust Company has charge of the reorganization. * * * Would you like me to go up there with you and see them about it." Plaintiff said: " Yes, I would; " and they went up together. Plaintiff concluded thereafter that he would enter the reorganization and pay the assessment; he took out of his pocket some St. Louis and San Francisco stock. Van Buren told him: " ' You have no account with me.' He said: ' Oh, I know that.' I said: ' Your account is with John D. Kline.' He said, ' Yes, I know that.' He said: ' Can't you take this? ' I said, ' Well, all I can do is to take this and place it to John D. Kline's account if you will give me instructions to do so.' He said: ' Why, that will be all right.' I said: ' I cannot give you a receipt for this. You will have to get your receipt from John D. Kline when you go back to Kingston.' He said: ' All right, that will be all right.' I said: ' Now, you tell Mr. Kline your decision in this matter and he will instruct me as to what stock to go into the reorganization for. * * * You instruct Mr. Kline and Mr. Kline will send me the order.' He said: ' That will be all right.' " On cross-examination the plaintiff was asked and answered as follows: " Q. The stock which you deposited with Mr. Van Buren — I don't mean Van Buren — but Mr. Kline — * * * was endorsed in blank by you? A. I suppose so. * * * Q. And the bonds were bearer bonds? A. I think so. Q. In other words, anything you put up as collateral had to be put into negotiable form? A. Yes, sir. Q. And you say you were advised by Kline that he was going to send this stock down to Van Buren, is that right? A. Yes. Q. And to be there as margin for Kline's account? A. *For my own account.* Q. Do I understand you to testify now that Kline told you that Van Buren was going to hold that as margin for your account? A. Yes, sir." (The last answer was objected to and excluded.) " Q. Well, when did he say that? A. At the time when I deposited

the stock. Q. You know Van Buren didn't have any account on his books with you, didn't you? A. I don't know. Q. You don't know that? A. No. Q. Didn't you talk with Van Buren about it? A. No. Q. Don't you remember when your 126 shares of St. Louis and San Francisco common were left, you did not leave it with Kline at all; you left it with Van Buren; don't you remember that? A. I don't; no. Q. Don't you remember that Mr. Van Buren advanced the money for the purchase of those St. Louis and San Francisco bonds and stock? A. Yes, sir. Q. They were delivered to him? A. To who? Q. To Van Buren. A. It might have been. Q. And then didn't you ask Mr. Van Buren to take it and give you a receipt? A. I don't remember * * * that. * * * Q. And Mr. Van Buren said he could not do it, because he had no account with you; you had an account with Kline? A. I don't remember. Q. And he told you to go to Kline and get a receipt? A. He might have told me, but I don't remember."

I do not think that this evidence, taken together, is at all conclusive that the plaintiff understood Kline was not the representative of Van Buren & Co., or that plaintiff's margin was used for any purpose other than for protection of his own account. Plaintiff might well have understood that he was dealing with the defendants through Kline and that their method of keeping the accounts required that the business should be done through Kline. It is not necessary to infer that the plaintiff understood that his margin was being used as protection for the joint account of the clients of the Kingston office and, if a sufficient number of the other clients failed to deposit sufficient margin, that his stocks would be sold, although his own margin was sufficient to protect his account; such a proposition only the ignorant and foolish would entertain; and Mr. Van Buren could not have believed he so understood.

The defendants, knowing that Kline's purchases of stock through them were for clients of the Kingston office; that the stocks and bonds pledged with them by Kline as margin for the omnibus account were not his property, but the property of those clients, and that the certificates of stock assigned in blank, or the bonds payable to bearer, had been delivered by each client as margin for his own account, it was unlawful to pledge the collateral belonging to one client as margin for the account of another, and the defendants were not justified in assuming that Kline, as a dealer independent of them, had authority so to do (*Talmage* v. *Third Nat. Bank of City of N. Y.*, 91 N. Y. 531); they were not justified in assuming that they could sell such collateral without

notice to the owner. Naturally neither a client of the Kingston office, nor the jury in this case, were called upon to assume that the defendants were practicing unlawful acts, but rather that defendants were doing their business in a lawful manner under the conditions and circumstances held out to the public by their conduct and acquiescence. The jury were justified in finding that, to the knowledge of defendants, they were being represented to the public as the principals in the Kingston business, and in answering the question above quoted, Yes, and in rendering a verdict for the plaintiff.

We have not referred to the other question submitted to the jury in the following words: " During the times referred to in the complaint was Kline acting for the defendants as their agent in conducting the brokerage business in Kingston? " The jury answered this question, Yes. This was intended to present to the jury the question whether or not there was an implied agency. Agency may be implied from the words and conduct of the parties under all the circumstances. It must be based upon facts for which the principal is responsible and upon a natural and reasonable construction of the words and conduct of the alleged principal, or of the agent, with knowledge of the principal. (2 C. J. 435, § 32.) " An agency may be implied where one person by his conduct holds out another as his agent, or thereby invests him with apparent or ostensible authority as agent; and he thereby becomes liable for such agent's acts, whether the liability is based upon an implied agency or an agency by estoppel, and whether he actually intends to be bound or not." (2 C. J. 440, § 36; *Ring* v. *Long Island Real Estate Exchange,* 93 App. Div. 442; affd., *sub nom. Ring* v. *Howell,* 184 N. Y. 553; *Matter of Zinke,* 90 Hun, 127.) We think the evidence above briefly referred to justified the jury in answering this question as it did. The inference, from the manner in which the business was done, the nature of the business, the sign upon the door, justified the plaintiff, as a reasonable and fair conclusion, in believing that Kline was the agent of the defendants, and that the defendants intended that the clients of the Kingston office should so understand.

The judgment should, therefore, be affirmed, with costs.

Judgment and order unanimously affirmed, with costs. HINMAN, J., not sitting.