JOHNSON *vs.* JONES.

What amounts to a general agency.

Instructions from a principal to his agent, which operate as private restrictions upon a general agency, do not affect persons dealing with the agent in ignorance of them.

Where a principal, on being informed of a purchase made by his agent, in his name, does not deny the agent's authority to make the purchase, but merely complains of the manner in which the authority has been exercised, he will be held to have admitted the right of the agent to bind him.

Where a person is sought to be charged for the act of another, alleged to be his agent, if there is evidence of an *apparent* authority in the agent to bind the principal, the question to be determined is, not what power was intended to be given to the agent, but what power a third person, dealing with him, had a right to infer, from his own acts and those of his principal, he possessed.

If a principal intends to disaffirm a purchase made by another, as his agent, he must give notice of his dissent, to the vendor, at once, and return the goods, Otherwise he will be presumed to have assented to, and ratified, the purchase.

It is not necessary for a party, even where he brings his action upon an original consideration for which a note has afterwards been given, under circumstances requiring its production at the trial, to cancel the note in form. It is sufficient if the note is produced, and placed at the disposal of the court.

MOTION, by the defendant, to set aside the report of a referee. The action was assumpsit, brought to recover for goods alleged to have been sold and delivered by the plaintiff to the defendant. The declaration contained two counts for goods, wares and merchandise sold and delivered; the one claiming a specific price, and the other claiming what the goods were reasonably worth; and also the common money counts. The plea was the general issue, with the usual notice of set-off. Charles H. Sprague, a witness for the plaintiff, testified that he was a clerk for the defendant, in the grocery business, at Syracuse, in May, 1846. That E. B. Crandall was acting as the agent of the defendant; that he was general agent for him at Syracuse. That one Stevens came to the defendant's store in May, 1846, and there was a bill of goods laid out by him, and delivered to Crandall, the amount of which was $111; and that Stevens

VOL. IV.          47

Johnson *v.* Jones.

professed to act as the agent of the plaintiff in selling the goods.
This evidence was objected to by the defendant's counsel, on
the ground that Stevens was himself a competent witness, and
that his declarations or representations could not be given in
evidence, to affect the defendant's rights. The referee over-
ruled the objection, and admitted the evidence, and the defen-
dant's counsel excepted. There was a bill of the goods rendered
by Stevens, which was made out in the name of the plaintiff.
This was left at the store in Syracuse, and the witness thought
it afterwards came to the defendant in Utica, with other papers
from the store. The goods went into the defendant's store at
Syracuse, and a due bill for $111 was given in payment for
them, dated June 2d, 1846, $50 being paid on the due bill at
its date. The store at Syracuse was closed in August, and
some of these goods were sold, and the proceeds went into the
defendant's store funds there. A due bill in the following words
and figures was then produced by the plaintiff and proved by
the witness. " Due R. S. Johnson, or bearer, one hundred and
eleven dollars, for value rec'd. Syracuse, June 2d, 1846. J. O.
Jones, per C. H. Sprague." The plaintiff's counsel offered to
read the due bill in evidence ; to which the defendant's counsel
objected, on the ground that Sprague had no authority to give
it, and hence it was void as against the defendant. The ref-
eree overruled the objection and admitted the note in evidence;
and the defendant's counsel excepted. The witness further
testified that Crandall bought and sold goods for the defendant ;
the business being carried on in the name of the defendant, who
kept a grocery store in Utica, and supplied the Syracuse store with
groceries from there. That the other supplies necessary for the
store—produce principally—were bought about Syracuse, by
Mr. Crandall in Jones' name. That they were in the habit
of giving due bills in the defendant's name; but witness did
not know that the defendant knew of this habit, though he
knew there were due bills out, in March, 1846, and there were
due bills given there after that time. That in March Jones
told Crandall not to sign his (Jones') name to any thing, but
if any goods were wanted for the store, he (Jones) would send

them up from Utica. That no one was present at this time except Jones, Crandall and the witness. That witness drew the due bill in question, and signed it, by Crandall's direction. To this evidence the defendant's counsel objected, on the ground that Crandall was a competent witness, and his directions could not be given in evidence; and that Crandall had no right to give notes, and could not authorize another person to do it. But the evidence was admitted. The witness further testified that he thought Jones paid one or two of the due bills after the store was closed, in August; that a part of the bill of goods in question had been sold previous to that time, and the balance was brought to Utica with the defendant's goods. That the defendant was informed of the purchase, when he came to Syracuse in August. He said he did not like it much; that it was too large a bill to buy of that kind of property; that he would have nothing to do with the goods, further than the $50 paid on them. That he disclaimed the goods, at that time, and did not include them in the inventory of his goods at Syracuse, and that after that time none of the goods were sold by the defendant, or on his account, and he forbade the sale of any of them. That a purchase of the same kind of goods had been made of Stevens by Crandall, for the defendant, the winter before the goods in question were bought; that the defendant's books showed that purchase, but that the defendant, although he had looked at the books, did not object to the first purchase. The plaintiff proved the amount of interest due upon the note. The defendant's counsel objected to any evidence respecting the interest, on the ground that the note was not a valid obligation as against the defendant; and that the account, being unliquidated, did not carry interest. But the evidence was admitted. The defendant's counsel then moved for a nonsuit, on the ground that the plaintiff had shown no right to recover, either on the original consideration, or on the due bill; which motion was denied. Some testimony was introduced, on the part of the defendant, to show that the goods were not worth as much as was agreed to be paid for them. The evidence being closed, the defendant's counsel called upon the plaintiff

to elect whether he would claim to recover upon the note, or upon the account, and moved the referee that the plaintiff be required to make that election.   The referee refused the motion; holding that it was sufficient that the note was produced and submitted to the decision of the referee, and to be cancelled, or otherwise disposed of, as he should direct.   That if the referee should be of the opinion that the plaintiff had succeeded, either upon the note, or upon the account, he would be entitled to a report.   The defendant's counsel then insisted that the plaintiff could not recover upon the note, on the ground that it was given without authority and was void; and that if he could recover upon the original indebtedness, at all, he could only recover what the goods were reasonably worth.   The referee reported in favor of the plaintiff, for $69,20.

*F. Kernan,* for the plaintiff.

*A. Coburn,* for the defendant.

*By the Court,* ALLEN, J.   We do not think that the report of the referee can be set aside as being against evidence. I. There was much evidence in the cause which, upon a trial at the circuit, would have been submitted to a jury as tending to prove actual authority on the part of Crandall to purchase the goods as the agent of the defendant; and the verdict of the jury in favor of the plaintiff, in such case, would have been conclusive.   (*Prescott* v. *Flinn,* 9 *Bing.* 19.    *Dunlap's Paley on Agency,* 169.    *Com. Bank of Lake Erie* v. *Norton,* 1 *Hill,* 501.) ˈThe referee in this case is in the place of the jury, and his conclusions upon questions of fact are equally final.    (1.) The agency of Crandall, like that in the *Commercial Bank of Lake Erie* v. *Norton, (supra,)* was very general; he having the entire charge of the business of the defendant at Syracuse.    (2.) He had been permitted to purchase liquors and produce, and other supplies for the store, upon a credit, and to give the defendant's notes therefor; and some of these notes were paid by the defendant without objection.   And although in

Johnson v. Jones.

March, before the purchase of the goods in question, he had in-
structed Crandall not to sign his name to any paper, but if he
wanted goods to send to him (the defendant) for them, it does
not appear that at that time he claimed that Crandall had ex-
ceeded his authority in making his purchases, and giving notes
in his name; so that these instructions must be considered as
private restrictions upon a general agency, and do not affect a
person dealing with the agent in ignorance of them. (*Story
on Agency*, § 19.   *Tradesmen's Bank* v. *Astor*, 11 *Wend.* 87.
*Ham. Pr. & Agent*, 268.)   (3.) In the winter previous to this
purchase, the agent had purchased of the plaintiff a small bill
of goods of the same character as these in question, which we
may reasonably infer, from the evidence, came to the knowledge
of the defendant some months before this purchase, and he
made no objections to the transaction.   (4.) When informed of
the transaction in question, he did not deny Crandall's author-
ity to make the purchase, but he complained of the manner in
which the authority had been exercised by Crandall.   " He
said he did not like it much; it was too large a bill to buy of
that kind of property."   It is true he also said at the same time
that he would have nothing to do with the goods farther than
the $50 he had paid on them.   There is nothing in these ex-
pressions denying the validity of the purchase, or his liability
to the plaintiff.   In connection with the other declarations of
the defendant it may well be inferred that he merely intended
to repudiate the transaction as between him and his agent, and
to hold the latter responsible for his abuse of the authority vested
in him.

' II.  There is strong evidence, in the case, of *apparent* author-
ity in Crandall to bind the defendant in this transaction; and
the real question is not what power was intended to be given
to the agent, but what power a third person, who dealt with
him, had a right to infer he possessed, from his own acts and
those of his principal.  (*Perkins* v. *Wash. Ins. Co.* 4 *Cowen*,
645.   *Com. Bank of Lake Erie* v. *Norton*, 1 *Hill*, 501.   *Story
on Agency*, § 130 *to* 133.)

III.  There was evidence that the defendant ratified the con-

tract, with full knowledge of all the circumstances. If he had intended to disaffirm it, it was his duty *at once* to give notice thereof to the plaintiff and return the goods; and not having done so, he will be presumed to have assented to, and ratified the purchase. (*Dunlap's Paley*, 172, *note* (9). 2 *Kent's Com.* 616.) So far from repudiating the contract, and giving notice to the plaintiff, in order that he might protect himself, the defendant took the goods, with the residue of the goods in his store, in August, 1846, from Syracuse to Utica, and put them in the loft of his store at the latter place, where they remained until April, 1847. What became of them after that time, or where they were at the time of the trial in April, 1848, does not appear. The referee was authorized to, and probably did, hold that the defendant had by his dealing with the goods, and his silence upon the subject, so far as the plaintiff was concerned, ratified the purchase made by his agent. (*Story on Agency*, §§ 250, 253. *Moss* v. *Rossie Lead Mining Co.* 5 *Hill*, 137.)

There is no force in the objection to the evidence of the declarations of Stevens, as to his agency for the plaintiff. The defendant dealt with him, and recognized him as such, and took from him a bill of the goods purchased, in the name of the plaintiff as the seller. What was said by Stevens was immaterial, except as a part of the transaction, and as such was competent.

Interest was clearly recoverable upon the demand. The amount was liquidated, and was due at the time of the sale. (*Walden* v. *Sherburn*, 15 *John.* 409.)

The defendant now insists that the report is erroneous, and should be set aside, for the reason that the note given at the time of the purchase of the goods was not cancelled at the trial.

This objection is not tenable, for several reasons. (1.) If the note was the note of the defendant, Crandall having authority to give it in his name, then the plaintiff was certainly not called upon to cancel it, but was entitled to a report upon it. (2.) If it was not the note of the defendant, then he had no interest in having it cancelled, but the plaintiff had a right to retain it as the note of the agent who gave it without authority.

(3.) The question was not raised before the referee, and cannot be now made upon the motion for a new trial; particularly as we can see that no harm can accrue to the defendant because the note was not cancelled in form. The judgment upon the report will be a bar to any recovery hereafter upon the note. (9 *Conn. Rep.* 23.)   (4.) It does not appear to have been decided, in any case in which the question has arisen, that it is necessary for a party, even where he brings his action upon an original consideration, for which a note has afterwards been given, under circumstances requiring its production at the trial, to cancel the note in form. The reason of the rule would seem to be satisfied by its production, and placing it at the disposal of the court. It is true that the courts have said that the note must be either shown to be lost or destroyed, or be produced and cancelled at the trial. But as was said before, it was not necessarily decided in any of the cases to which we were referred, or which we have examined. In *Holmes* v. *D'Camp,* (1 *John.* 34,) the plaintiff merely produced the note at the trial, but did not cancel it. On the argument the plaintiff's counsel produced it, cancelled it, and filed it with the clerk, although it does not appear that this was required by the court. In *Burdick* v. *Green,* (15 *John.* 247,) Spencer, J. says, "The mere giving a negotiable note, or its endorsement to a third person, does not extinguish the original cause of action, provided the payee can show it to be lost, or can produce it to be cancelled." In this case the plaintiff produced the note and placed it at the disposal of the referee; and this was all he was bound to do. The motion to set aside the report of the referee must be denied.