(24 App. Div. 280.)

BLISS v. SHERRILL et al.

(Supreme Court, Appellate Division, Fourth Department.   February 6, 1898.)

USURY—MORTGAGES—LOAN BY AGENT—RATIFICATION BY PRINCIPAL.

A husband loaned $50,000 for his wife, and, in addition to lawful interest, exacted a bonus of $10,000. He deposited half of it to the wife's credit, ostensibly as a payment on his own debt, and gave the other half to brokers who had secured the business. An interest payment on the whole amount loaned was also received by the wife. On foreclosure, mortgagor pleaded usury. Plaintiff testified that she heard nothing about the bonus till the action was begun; that she left the management of her business to her husband, "gave him entire control," and "paid no attention to the details." Held that, considering the amount involved, the wife had remained deliberately ignorant of the transaction, and, having sought to enforce it with full knowledge, ratified the act of her husband, and made the usurious contract her own.

Appeal from special term, Erie county.

Action by Nancy E. Bliss against Charles L. Sherrill and others to foreclose a mortgage. From a decree in favor of plaintiff for the whole amount loaned, but applying to the principal indebtedness a bonus exacted by plaintiff as a consideration for the loan in excess of lawful interest (42 N. Y. Supp. 432), defendant Sherrill appeals. Reversed.

The defendant Sherrill and his wife executed a bond and mortgage to the plaintiff (respondent) on the 1st day of November, 1894, to secure the payment of $50,000. The mortgage was upon a lot in the city of Buffalo and a building in the process of construction. This building was a monolithic cement structure, intended for an apartment house. The plaintiff, Nancy E. Bliss, was the wife of Joshua S. Bliss, who had charge of and transacted all of her business in regard to loaning her money, and had absolute authority on the subject. The defendant applied to one Spencer S. Kingsley, a loan broker in Buffalo, to obtain the loan of the $50,000. Kingsley introduced him to one George H. Sickles, of Buffalo, who was also a loan agent. Sickles consulted the husband, Joshua, and Joshua and Sickles and the defendant entered into an agreement, whereby the plaintiff was to loan the defendant the $50,000, and take security upon the premises referred to at 6 per cent. Thirty thousand dollars was to be paid down to the defendant, out of which he was to pay to these agents of the plaintiff $10,000 bonus, $5,000 of which was to go to the husband, and the balance to Sickles and Kingsley. The remaining $20,000 secured by the mortgage was to be paid in installments as the building was constructed and completed. Shortly before this, the husband had deposited in a bank in Buffalo a considerable sum of money in the plaintiff's

49 N.Y.S.—36

name; and, upon the execution of the mortgage, the defendant received from this bank the $20,000, and $10,000 was received, as before stated, by the agents. The husband immediately deposited his share of the bonus ($5,000) in the said bank to the credit of the plaintiff, and she had the benefit of it thereafter. Kingsley received $625 of this bonus from Sickles. Only $5,000 was paid to the defendant. Before the foreclosure, an installment of interest upon this whole mortgage had been paid to the plaintiff. These facts were found by the trial court. That court also found that about September, 1894, the husband was indebted to the plaintiff in the sum of $54,000 and upward, for moneys theretofore had and received from her, and that it had been agreed between the plaintiff and her husband that he would pay her the $50,000 by investing that amount on a bond and mortgage running to her, and, pursuant to that agreement, he deposited it in a Buffalo bank; that, when the husband deposited the $5,000 bonus in the bank to the credit of the plaintiff, he represented to her, and she believed it to be true, that it was a payment of that amount upon his indebtedness to her; that the plaintiff had no knowledge of the usurious character of the contract upon which the bond and mortgage was founded until about the time of the commencement of the action, when she learned the fact. The defendant answered, pleading the usurious arrangement, and setting forth the facts. Nevertheless, the plaintiff, with full knowledge of those facts, pressed her claim to judgment. The trial court directed a judgment of foreclosure and sale, but directed that the $10,000 bonus should be treated as a payment upon the bond and mortgage, so that the foreclosure was for the sum of $35,000 and interest, the whole amount received by the defendant including the bonus.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

George Clinton, for appellant.
H. O. Bliss, for respondent.

PER CURIAM. It appeared from the evidence that, at the time of the loan which resulted in this action, there was great stringency in the money market in Buffalo. Loans were hard to obtain, and that was the reason given by the plaintiff's agent for the extraordinary demand of $10,000 bonus out of a $50,000 loan, with interest on the whole amount. The circumstances surrounding the case and the careful examination of the evidence leave no doubt of the oppressive character of the contract forced upon the defendant. The plaintiff seeks to shield herself from complicity in the transaction by saying that she was ignorant of its usurious nature, and though she received the fruits of the transaction to the extent of $5,000 of the bonus which was actually taken out of the loan at the time it was made, and although she received a portion of the interest, she was still ignorant of the means by which it was brought about, and excuses this position in her testimony. The action was commenced the 12th of November, 1895. She testified in October, 1896. After stating that she did not know about the bonus, etc., she testified as follows:

"Less than a year ago was the first time I heard about any commissions having been paid to anybody in connection with that loan. This time was at the time the foreclosure was begun. I left all my matters to Mr. Bliss,— the management of my business matters. I gave him entire control. I often signed checks when he asked me. I paid no attention to the details of the business. I left it to his judgment. The consequences thereof, I made no inquiries in regard to the details of this loan. I simply knew that he made this loan for me. I trusted him to protect my interests, to do what he saw fit. I was perfectly satisfied with everything he did in regard to it. This balance in the Union Bank has not been checked out. It remains there to

my credit, just as it was placed.  I had no separate business of my own except the loaning of this money."

There is no evidence in the case that the money deposited by the husband before the loan was made, and out of which it was made, was money of the plaintiff, except the testimony of the husband in which he says that he was owing the plaintiff fifty-four or fifty-five thousand dollars; that this indebtedness grew out of his having received the proceeds from the sale of property which she had owned; that his wife requested him, as soon as he had collected in any money, to invest it in some way in her name, and that he directed Sickles to invest fifty to fifty-five thousand dollars for the plaintiff, and he concludes by saying:

"There was an arrangement between myself and my wife that after the real estate which had belonged to her had been sold and converted into money, that I might use some of it in my business."

Considering the relation of these parties, husband and wife, and the failure of the case to disclose anything but this bare statement as to how this large sum of money became the property of the plaintiff, and this testimony given at the trial by an interested party when the testimony was absolutely necessary to save this loan from the effect of the statutes against usury, we can hardly escape the conclusion, under all the circumstances of this case, or, at least, the strong suspicion, that this was the property of the husband that was being loaned, and the transaction carried on in the name of the plaintiff as a contrivance to cover the usury.    It is perhaps not necessary to go to this extent in order to reverse the judgment appealed from, but it is a consideration that addresses itself to a court of equity in view of the extraordinary features of this case.

The appellant insists that as the husband was the agent of the plaintiff for all purposes, and in no sense an intermediary, he represented the plaintiff in this transaction, and she is bound by his acts. The plaintiff's counsel insists that as the plaintiff was ignorant of the usurious nature of the loan, and the trial court has so found, she had the right to recover in this action, and to enforce the mortgage for the whole amount advanced, including the $10,000 of bonus that her agents received, $5,000 of which was paid to her husband, and by him paid to her; and that, too, notwithstanding the fact that, before the trial of the action, she had discovered the existence of the facts.    And he cites, as sustaining him in this remarkable position, Condit v. Baldwin, 21 N. Y. 220; Bell v. Day, 32 N. Y. 165; Estevez v. Purdy, 66 N. Y. 446; Insurance Co. v. Kashaw, Id. 544; Van Wyck v. Watters, 81 N. Y. 352; Fellows v. Longyor, 91 N. Y. 324; Philips v. Mackellar, 92 N. Y. 34; Stillman v. Northrup, 109 N. Y. 473, 17 N. E. 379.

In Condit v. Baldwin, supra, a Wayne county lawyer had $400 to loan for a client in New Jersey.  A bargain was made with the defendant, by which the defendant was to pay, for attorney's fees, etc., $25 out of the $400 for the loan.  The client advanced the $400, and the attorney kept the $25.  It was held that this was a separate arrangement between the attorney and the defendant, of which the client was ignorant, and that she could recover.  This was the first of a series of cases upon that subject, and was de-

cided by a divided court, five to three. Bell v. Day, supra, was a curious case, where no opinion was pronounced in favor of the reversal of the judgment. One Mrs. Earl had $1,000 in gold to lend. She intrusted it to one Glover as her agent. He loaned the money on a note to the defendant Day, and Day agreed to pay Glover $50 bonus, which he did. The court of appeals held (two of the judges writing strong dissenting opinions against it, and another judge concurring with them) that the decision in Condit v. Baldwin governed on the principle of stare decisis. Two of the five judges not dissenting (Denio and Porter) expressed the concurrence in the views expressed in one of the dissenting opinions, but acquiesced in a reversal on the authority of Condit v. Baldwin; so that five of the eight judges constituting the court, in effect, repudiated the doctrine of Condit v. Baldwin. Algur v. Gardner, 54 N. Y. 360, substantially disapproved the case of Condit v. Baldwin. In Estevez v. Purdy, supra, held, that the employment of an agent to effect a loan does not impliedly or apparently authorize him to violate law or do any illegal act. There the agent exacted a bonus, but stress was laid upon the fact that the lender did not receive any portion of the bonus. In Insurance Co. v. Kashaw, supra, the court says that evidence failed to show that the plaintiff was a party to the agreement for the bonus, or received any benefit therefrom, and so the defense of usury was not sustained. In Van Wyck v. Watters, supra, there was no knowledge of the usurious contract by the principal, nor was there any proof that he received a portion of the bonus, or in any form reaped any benefit from the same. Fellows v. Longyor, supra, was where the guardian of an infant loaned the infant's money, and exacted a bonus, and in no manner aids the plaintiff.

The cases we have traced so far treat the contract for the bonus as purely the contract of the agent, and separate and apart from the contract made by the principal. The principal, having given instructions only to make a valid loan, and parting with the full amount of the loan, and ignorant of the side arrangement between the agent and the defendant, and not participating in the bonus, could recover. We now reach the case upon which the trial court mainly depended in reaching its judgment in this case,—Philips v. Mackellar, supra. That case was an action brought to foreclose a mortgage given by the defendant to the plaintiff's testator for $12,-000. The testator loaned the money through an agent, and parted with the full amount of the loan for that purpose. Two days after the money was received by the defendant, he gave his check to the agent, embracing $1,200; and it was claimed that that was an amount paid in excess of the legal interest by the defendant upon a usurious contract with the agent. It was denied by the agent that it was given for that purpose, and he claimed that it was given to apply on another and legitimate business transaction that the testator had with the defendant. It appeared that this $1,200 was received by the testator, but he supposed that it related to other transactions. The trial court found that there was usury in the matter. The court of appeals held the other way, and reversed

the judgment by a divided court, and the burden of the opinion is that inasmuch as the $1,200 was received by the testator in good faith as a payment on another matter, and as it turned out, in fact, that it was not such a payment, it would not invalidate the mortgage that it was sought to foreclose, but it might be treated as a payment upon such mortgage. This case is plainly exceptional, and it was very doubtful from the evidence whether the $1,200 was paid to the agent as a bonus, and upon the whole case the court of appeals disposed of the matter upon equitable principles; and we think there is nothing in that case to afford the justification for the judgment in the case at bar.

Stillman v. Northrup, supra, is in line with the cases we have discussed preceding the last, Judge Earl saying, at page 477, 109 N. Y., and page 380, 17 N. E.:

"There is no proof nor claim that the plaintiff received any part of the fifty dollars which was exacted by her brother as a condition of the loan to Thomas Bishop, or that she had any benefit whatever therefrom. It is undisputed that she actually loaned and advanced to Bishop a thousand dollars, the full amount of the note, and that the money belonged to her."

The learned counsel for the defendant urges the proposition that assuming that the plaintiff, at the time that the loan was made, was ignorant of its true character, she, by her subsequent knowledge and conduct, and the receipt of a portion of the bonus and interest, and with full knowledge of the usurious arrangement, sought to enforce it by action, ratified the act of her husband, made the usurious contract her own, which ratification was equivalent to an original authority. There is much force in this position. Elwell v. Chamberlin, 31 N. Y. 611; Bliven v. Lydecker, 130 N. Y. 102, 28 N. E. 625. The headnote to the last case is as follows:

"When an agent authorized to lend moneys of his principal, but not to take usury, lends such moneys at a usurious rate, and both the sum lent and usury exacted are secured by the same obligation, which the principal, knowing that it is for a larger amount than the sum loaned, without explanation, accepts and has the benefit of, it is an adoption and ratification by him of the act of the agent, and neither the principal nor his assignees can enforce the obligation."

It is true that a ratification can only occur where the principal has knowledge of the material facts, but the knowledge may be implied from circumstances. The ratification of an unauthorized act is effected more frequently by implication from the acts and conduct of persons in whose behalf the act is done, inconsistent with any intention other than the adoption of such acts, than by express words. 1 Am. & Eng. Enc. Law (2d Ed.) 1195, and cases cited in note 1. The circumstances of this case make the above rule quite applicable. As we have seen, the plaintiff testified to her entire ignorance of the transaction, but she seems to repose upon her ignorance, and would not or could not see. It is also a rule governing ratifications that ignorance which is intentional or deliberate will not defeat the principle of ratification. Id. 1190, and cases cited in note 2. And see Johnson v. Jones, 4 Barb. 369; Dove v. Martin, 23 Miss. 588; Bank v. Conway, 28 Miss. 667.

It was the duty of the plaintiff to know something about her bank account; to have her husband report to her what he was doing with this large amount of her property. She could not, without investigation and care, permit her husband to proceed with this property, violate the law, oppress the public by usurious contracts, giving her the benefit of it, and she neglecting and refusing to know anything about it; "leaving all matters to him," as she says, "giving him entire control," "paying no attention to the details of the business." In so doing, she infringes another principle of the law of agency, which requires that "a principal should within a reasonable time examine his agent's report, and disavow such acts as are unauthorized; and, if he fails to do so, his silence will be deemed good evidence of a ratification." 1 Am. & Eng. Enc. Law, 1206, and cases cited in note 3. The facts of this case clearly take it out of the line of cases cited by the respondent's counsel. In none of those cases were such broad powers given to the agent as in this. The husband here was in fact the principal. The wife, so to speak, was absorbed in him, and he proceeded as her alter ego. A case resembling this in many respects is Braine v. Rosswog, 13 App. Div. 249, 42 N. Y. Supp. 1098, which may be perused with profit in the disposition of this case. We have reached the conclusion that this judgment cannot stand. The trial court sought to relieve the loss that would come to the plaintiff or her husband (who had loaned the money invested) by treating the bonus as a payment, and giving judgment for the residue.

The judgment should be reversed, and a new trial ordered, with costs to abide the event.