tion or upon affidavits. "The sole object of an interlocutory injunction is to preserve the subject in controversy in its then condition, and, without determining any questions of right, merely to prevent the further perpetration of wrong, or the doing of any act whereby the right in controversy may be materially injured or endangered." High, Inj. § 4. At section 5 the same author says:

"It is to be constantly borne in mind that, in granting temporary relief by interlocutory injunction, courts of equity in no manner anticipate the ultimate determination of the questions of right involved. They merely recognize that a sufficient case has been made out to warrant the preservation of the property or rights in issue in statu quo until a hearing upon the merits, without expressing, and, indeed, without having the means of forming, a final opinion as to such rights. And, in order to sustain an injunction for the protection of property pendente lite, it is not necessary to decide in favor of plaintiff upon the merits; nor is it necessary that he should present such a case as will certainly entitle him to a decree upon the final hearing, since he may be entitled to an interlocutory injunction, although his right to the relief prayed for may ultimately fail; nor is the decision of the court in granting or refusing a preliminary injunction conclusive upon either the courts or parties on the subsequent disposition of the case by final decree."

In the case at bar the defendant conceded its intention, in case the injunction is vacated, to immediately enter upon, excavate the street in question, and construct a conduit therein, all of which it is the sole purpose of this action to prevent; and it is apparent that, if the defendant is now permitted to accomplish such purpose, the plaintiff would practically be without redress, irrespective of the final result of the action. To vacate the injunction would, in effect, permit the defendant to accomplish its purpose, wholly irrespective of whether or not it is entitled to exercise the rights which it claims in Oxford street, upon the facts as they may be found upon the trial of this action, and so the rights of the parties would be practically settled by such a decision. Without passing upon or determining any of the questions of fact raised by the affidavits of the respective parties, or indicating what rules of law may be applicable to the facts which may be found upon the trial, we are of the opinion that under all the circumstances the injunction should be retained until the decision of the action, and that the order appealed from should be affirmed.

Order affirmed, with $10 costs and disbursements. All concur, except ADAMS, P. J., not voting.

BLISS v. SHERRILL.

(Supreme Court, Appellate Division, Fourth Department. May 22, 1900.)

USURY—EVIDENCE—SUFFICIENCY.

Plaintiff loaned $50,000 to defendant on the recommendation of her husband, who acted as her agent in making the loan. The borrower had promised a broker $10,000 of the proceeds of the loan for procuring it for him, and the husband recommended the loan to his wife because the broker had agreed to pay the husband $5,000 of such commission. The husband retained this sum, and deposited it to the wife's credit, to apply on an indebtedness of the husband to her. The wife knew nothing of the payment to the husband. *Held* sufficient to support a finding that plaintiff was not guilty of usury.

Adams, P. J., dissenting.

Appeal from special term, Erie county.

Suit by Nancy E. Bliss against Charles L. Sherrill and others to foreclose a real-estate mortgage. From a judgment in favor of plaintiff, the defendant above named appeals. Affirmed.

The action was commenced on the 12th day of November, 1895, to foreclose a mortgage dated November 1, 1894, made by the defendant Charles L. Sherrill and his wife, to secure the payment of $50,000 at the expiration of five years from date, with interest, according to the conditions of a bond bearing even date therewith. The only defense interposed or which is urged upon this appeal is usury. The trial court found that the mortgage and the bond accompanying the same are not usurious, but are valid and legal securities for the amount of money advanced by the plaintiff to the defendant Sherrill; that the plaintiff is entitled to a judgment of foreclosure and sale of the premises described in the mortgage, and to a deficiency judgment against the defendant Sherrill, including her costs and disbursements, to be taxed. The court also found that the plaintiff is entitled to a lien upon the premises for all moneys advanced by her since she obtained a deed and entered into possession of the same under the foreclosure sale, for taxes and ordinary repairs, and for all moneys advanced by her for permanent improvements, to the extent and amount that such improvements have increased the value of the premises, less the rents and profits received by her during said time; and an interlocutory judgment was directed accordingly, and a referee appointed to take and state such accounts.

Argued before ADAMS, P. J., and McLENNAN, SPRING, and WILLIAMS, JJ.

George Clinton, for appellant.
Frank Brundage, for respondent.

McLENNAN, J. The evidence in this case tends to show that in October, 1894, the defendant Charles L. Sherrill was engaged in the erection of an apartment house in the city of Buffalo, N. Y., and, being without sufficient funds to complete the same, he applied to Spencer S. Kingsley, a real-estate agent and loan broker in the city of Buffalo, to procure a loan for him of $50,000, to be secured by a mortgage upon the premises. Kingsley, being unable to procure such loan, introduced the defendant to one George H. Sickels, also a real-estate agent and loan broker, and thereupon such negotiations were had between them that an oral agreement was entered into by which it was agreed by the defendant that in case said Sickels obtained such loan he would receive a commission of $10,000; but out of said sum he agreed to pay to the broker Kingsley his commission, and to his brother Frank E. Sickels, an attorney, all charges for his legal services in preparing the papers, examining the title, and attending to the discharge of certain liens upon the premises, which then amounted to about $20,000. In March, 1894, the broker Sickels had been informed by one Joshua S. Bliss, the husband of the plaintiff, that she had, or soon would have, fifty or sixty thousand dollars for investment, and requested him, in case he had any applications for loans, to inform him of that fact. Soon after Sickels and the defendant entered into the above agreement, Sickels informed the plaintiff's husband that he had an application by the defendant Sherrill for a loan of $50,000, to be secured by a mortgage upon the premises in question, but did not inform him of the agreement which he had entered into with the defendant, by which

he was to receive $10,000 for his commission in case such loan was made. Thereupon the broker Sickels, the defendant, and Joshua S. Bliss, the plaintiff's husband, together made an examination of the building then in process of construction, and of the plans, drawings, photographs, and prospectus of the same, all of which were delivered to Joshua S. Bliss, were by him taken to his home, in Tonawanda, N. Y., and submitted to the plaintiff, when for the first time she was informed of the defendant's application. She and her husband consulted together as to the advisability of making the loan, and concluded not to do so. Soon thereafter the plaintiff's husband called upon Sickels and informed him, in substance, that the plaintiff had decided not to make the loan, and stated the reasons for such decision, which were largely personal to himself. Sickels then stated to Joshua S. Bliss that if he (Bliss) would advise his wife to make the loan, and she consented to do so, he would pay him (Bliss), personally, the sum of $5,000; being one-half of his commissions or bonus which the defendant had agreed to pay. The plaintiff's husband assented to the proposition, and advised his wife to make the loan, but did not inform her of the agreement he had made with Sickels, or which Sickels had made with the defendant, and she had no knowledge of the same. She, however, acted upon her husband's advice, and consented to make the loan to the defendant. Thereupon, and about November 1, 1894, the plaintiff, through her husband as her agent, entered into a written contract with the defendant which provided, among other things, that the plaintiff would loan to the defendant the sum of $50,000,—$30,000 to be paid at once, and the balance, $20,000, to be placed on deposit in a bank in the city of Buffalo as a guaranty that said loan would be completed, which balance was to be paid to the defendant as follows: $5,000 when the roof of the building was on, $5,000 when a certain plumbing contract was performed and certain other work was done upon the building, and the remaining $10,000 when the building was fully completed; interest to be computed on such installments only as advanced; the whole sum to be secured by a mortgage upon the premises. On the 1st day of November, 1894, pursuant to the contract executed by the plaintiff and the defendant, the plaintiff advanced the sum of $30,000 to the defendant, through George H. Sickels, by check upon the Union Bank of Buffalo, payable to his order, and which was by her delivered to her husband, Joshua S. Bliss, and by him delivered to said George H. Sickels. The check was deposited in the Bank of Commerce in Buffalo to the credit of the defendant on the 3d day of November, 1894, after the bond and mortgage in suit had been executed, and at the same time the defendant Charles L. Sherrill paid out of said sum of $30,000 so deposited $10,000 to George H. Sickels, by check payable to his order, and the balance by several checks payable to the order of Frank E. Sickels, with which he was to pay, and in fact did pay, certain indebtedness of the defendant and discharge certain liens upon said building, all according to instructions given him by the defendant. The $10,000 paid by the defendant to George H. Sickels was distributed by him as follows: $5,000 was paid to plaintiff's husband, Joshua S. Bliss, pursuant to the agreement made between him and George H. Sickels, for advising his wife to

make the loan in question; $625 to the broker Spencer S. Kingsley, who introduced him to the defendant; $2,000 to his brother Frank E. Sickels for legal services rendered in connection with the loan; and the balance, $2,375, he retained for himself as commission,—all in accordance with the verbal agreement made between him and the defendant Sherrill. After the execution and delivery of the mortgage, bond, and contract in question, the plaintiff advanced $5,000 to the defendant in addition to the $30,000 already referred to, by check signed by her, drawn upon the Union Bank of Buffalo, and payable to the order of George H. Sickels, which was all paid out by him pursuant to defendant's instructions, and was all expended in payment of indebtedness of the defendant which arose in connection with the mortgaged premises, except the sum of $791.90, which was returned to the plaintiff, to be applied upon the first installment of interest which was then due upon said mortgage. The plaintiff also advanced $485.65 to the defendant in November, 1895, through George H. Sickels, which he paid out to protect the property and for taxes, and which it is conceded was proper, and should be treated as secured by the mortgage. In case it is held to be a valid security, the total amount advanced by the plaintiff was $34,693.75. The defendant was unable to complete the building, or to procure such additional work to be done upon it as entitled him to any further advancement of money under his contract with the plaintiff, which was concurrent with, and made a part of, said bond and mortgage. He also failed to pay the interest upon the sums already advanced in accordance with the terms of the bond and mortgage, and thus the plaintiff had the right to, and thereupon did, declare the whole amount secured by the said mortgage immediately due and payable, and commenced this action for its foreclosure. Such proceedings were had that a decree of foreclosure was entered, and a sale of the premises had, at which the plaintiff became the purchaser; bidding therefor the sum of $27,000. She thereupon entered into possession of the premises, and expended large sums in payment of taxes, to discharge liens, and in completing the building. The amount of such expenditures was directed by the judgment appealed from to be ascertained by a referee appointed for that purpose, and such amount, less the amount received by the plaintiff for rents and profits, was declared to be a lien upon the premises. The facts so far recited are hardly in dispute.

The evidence also tends to show that, when the negotiations for the loan in question began, the plaintiff's husband, Joshua S. Bliss, who was her agent and had the entire control and management of her property, was indebted to her to an amount in excess of $50,000, the sum secured by the mortgage; that the amount of money advanced by the plaintiff to the defendant was deposited by her husband to her credit in the Union Bank of Buffalo, to apply upon such indebtedness, pursuant to an agreement between them, and for the purpose of enabling her to make the loan in question, and to carry out the contract therefor which she had entered into with the defendant; that the $5,000 which was paid to the plaintiff's husband by George H. Sickels, being a part of the $10,000 bonus which he received from Sherrill pursuant to their agreement, was deposited by Joshua S. Bliss to the credit of

his wife, to apply upon his indebtedness to her, and formed a part of the sum which she advanced to the defendant Sherrill. That it was agreed between the defendant and George H. Sickels that Sickels should retain $10,000 of the first moneys advanced by the plaintiff by the loan in question as a bonus, as between him and the defendant, and that he did retain such sum is conceded. That, before the execution and delivery of the bond and mortgage in question, the plaintiff's agent knew that such arrangement had been made between the defendant and Sickels, and that he made an arrangement by which he was to receive $5,000, one-half of such bonus; that he did receive such sum pursuant to the agreement between him and Sickels, and paid it to his wife, by depositing the same to her credit; and that she afterwards paid out such sum, with the $30,000 previously deposited to her credit, to the defendant, in performance of the terms of her contract with him,—are also conceded.

The claim of the plaintiff that the moneys advanced to the defendant belonged to her, and were deposited to her credit in the Union Bank of Buffalo in payment of her husband's indebtedness to her, pursuant to an agreement between them; that her husband was authorized to act as her agent for the purpose of making a valid and legal loan, and for no other purpose; that she was ignorant of the fact that any bonus had been exacted for making such loan, or that her husband had received any part of such bonus or any other sum in connection therewith, or that any moneys so obtained had been deposited to her credit by her husband in payment of his indebtedness to her,—are supported by the positive evidence of the plaintiff and of her husband, and no testimony is given in contradiction. Neither the defendant, George H. Sickels, the broker, Frank E. Sickels, the attorney, or any other witness, assumes to testify that the plaintiff had been informed or had any knowledge of the agreement made between George H. Sickels and the defendant, by which $10,000 was paid by the defendant for obtaining the loan in question, or of the agreement by which her husband was to receive a part of the same. It is urged, however, that considering all the circumstances, the relations which the plaintiff and Joshua S. Bliss sustain to each other, and the fact that they are interested witnesses, their evidence should be disbelieved, and that it should be determined, as matter of law, that the loan in question is usurious.

The record now before us contains the evidence given upon a second trial of this case. Upon the first trial much of the evidence was the same as that given upon this trial, and the learned trial justice then presiding, who heard the testimony and saw the witnesses, found, as matter of fact, that the plaintiff did not know that George H. Sickels had exacted any bonus from the defendant, did not know that any part of such bonus had been paid to her husband, and did not know that it had been applied in payment of his indebtedness to her, and that she had given no authority to her husband or any one else to negotiate other than a legal and valid loan, and that she in no manner ratified such illegal acts; and it was held that the mortgage was not usurious, and that the plaintiff was entitled to a decree of foreclosure and sale, and to a judgment for deficiency. Upon an examination

of the record then before this court, it was held (24 App. Div. 280, 49 N. Y. Supp. 561) that under the circumstances the plaintiff did not establish her ignorance of the usurious character of the mortgage, and that it was her duty to have examined into the acts of her agent, Joshua S. Bliss, and to disavow such as were unauthorized, or else be concluded by them; and the judgment was reversed, and a new trial ordered. The case was again tried before another justice, and after having heard all the evidence, with the advantage of having seen the witnesses and their manner of giving their testimony, the same conclusion was reached upon the facts; and it was held that, under the rules of law applicable to such state of facts, the mortgage in question is not usurious, and that the plaintiff is entitled to a decree of foreclosure and sale. Upon the last trial some additional evidence was given, which tended to substantiate the plaintiff's contention as to the issues in dispute. The evidence of the defendant upon this trial is such as to put it beyond doubt that his agreement with George H. Sickels was that he would pay to him a commission for procuring the loan, and also a commission to Mr. Kingsley, the other broker, and that he would pay the attorney, Frank E. Sickels, for the legal services which he might render in connection with the loan. There is nothing in the defendant's evidence to indicate that he understood that the plaintiff, or any one in her behalf, was to have any part of the $10,000 which he agreed to pay, and his evidence is not susceptible of such construction. The circumstances surrounding the transaction between the defendant George H. Sickels and the plaintiff's husband indicate that it was the original intention of George H. Sickels to divide the $10,000 between himself and his brother, except such small sum as he might pay to Kingsley, who introduced him to the defendant. When Sickels first applied to the plaintiff, through her husband, for the loan, there was no suggestion that any bonus was to be paid or received; and when the matter was first presented to the plaintiff, so far as appears by the evidence, the question of bonus had only been discussed between the defendant and George H. Sickels. After the plaintiff had concluded not to make the loan, because it would necessitate her husband's giving up an intended trip in the South, in order that he might look after the construction of the building, and when such conclusion was reported to Sickels, it was suggested for the first time to the husband that a bonus of $10,000 was to be exacted, and that the plaintiff's husband personally could have one-half of the same if he would advise the plaintiff to make the loan. This the husband consented to do, and the loan was made. Joshua S. Bliss testified positively that the plaintiff was not informed of such arrangement by him. The plaintiff testified with equal positiveness that she had no knowledge of the agreement made. George H. Sickels, the broker, and Frank E. Sickels, the attorney, also testified that they in no manner informed her that such proposition had been made and accepted, or even discussed. A finding that the plaintiff had such knowledge necessarily involves the conclusion that she and her husband committed willful perjury, and also that, being possessed of such knowledge, she failed to mention the fact to George H. or Frank E. Sickels, with whom the various transactions leading up to the consummation of the

loan were had, which is extremely improbable, or else that they also testified falsely. The plaintiff's contention that the money advanced to the defendant was in fact her money, and that it was deposited to her credit by her husband to apply upon his indebtedness to her, is materially strengthened by additional evidence given upon this trial. The facts as to the property and business of the plaintiff's husband since their marriage, and the agreement and understanding had between them in respect to the property, are given in detail. The plaintiff testified, in substance, that soon after her marriage she let her husband have twelve or fifteen hundred dollars; that he put it into his business, which was successful, and he accumulated a substantial fortune; that they had no children, and it was agreed between them that she should have one-half of what was made; that from time to time the title to property, partly representing her interest, was taken in her name, and sometimes by them jointly; that when such property was sold the proceeds were reinvested in other property, which was also taken in her name; that, before the loan in question was made, substantially all of such property had been sold and converted into cash, which was deposited in various banks to the credit of her husband, but that, under the agreement existing between them, such moneys to an amount in excess of $50,000 belonged to her, or that her husband was indebted to her in that amount; that at the time in question the plaintiff's husband had retired from active business, owed no debts except what he owed his wife, and was amply able to liquidate any indebtedness which he owed her. Joshua S. Bliss, the plaintiff's husband, testified to substantially the same facts. Unless the story of the plaintiff and her husband is a fabrication from beginning to end, the money furnished to the defendant belonged to the plaintiff, and was deposited by her husband to her credit in payment of a legal and moral obligation. It is not unreasonable that the share of the property to which she was entitled under the agreement with her husband, if one was made, should be invested in her name, rather than that it should be left to be divided pursuant to the provisions of his will in case she survived him, or according to the law governing the estates of intestates. At all events, that issue, as well as the question of the plaintiff's ratification of her husband's acts, and the other issues in the case, were all for the trial court to determine, after hearing and weighing the evidence, seeing the witnesses, and observing their manner and conduct when giving their evidence, rather than for an appellate tribunal upon the record. If the facts found by the learned trial justice are justified by the evidence, then the conclusions of law follow, under the authorities cited in the opinion of this court upon the former appeal. 24 App. Div. 280, 49 N. Y. Supp. 561. While we adhere to the opinion expressed upon the evidence contained in the record upon the former appeal, we are constrained to hold that, upon the evidence now presented, this court would not be justified in reversing the judgment solely upon the ground that the decision of the learned trial justice is against the weight of evidence. In reaching this conclusion, weight is given to the fact that upon a second trial of the case, had before another justice, the contention of the plaintiff was found to be true. Different inferences may be drawn

from the circumstances surrounding the transactions between the parties, and only inferences, because there is substantially no conflict in the testimony of the witnesses. We are of the opinion that the inferences which should be drawn are not so clearly indicated by the evidence to be adverse to the plaintiff's contention as to justify this court in again sending the case back for a new trial.

Plaintiff's counsel upon the trial stipulated that no claim was made by the plaintiff for the $5,000 which her husband received through the broker Sickels, and we are of the opinion that the equities between the parties are not such as to justify this court in compelling a resubmission of this controversy to another trial court for its determination. It follows that the interlocutory judgment appealed from should be affirmed, with costs.

Interlocutory judgment affirmed, with costs. All concur, except ADAMS, P. J., who dissents in memorandum.

ADAMS, P. J. (dissenting). The bonus exacted as a condition of the loan in question was the unconscionable sum of $10,000, which was about one-third of the amount actually loaned. By an arrangement entered into between the lender's husband and the negotiator of the loan, one-half of this sum was paid over to the former, and by him transferred to his wife's bank account, in reduction, as it was claimed, of a certain indebtedness owing by him to her. This arrangement was certainly a most ingenious one, but it requires something of a strain upon human credulity to believe that it was entered into and fully accomplished without the knowledge of the plaintiff. Upon the former appeal we held that in transactions attending the plaintiff's loan the husband was in fact the principal, or, in other words, the alter ego of the wife, and that under the circumstances of the case the latter could not repose upon her ignorance, and thereby defeat the principle of ratification. 24 App. Div. 280, 49 N. Y. Supp. 561. Upon the second trial the evidence, so far as it bore upon this feature of the case, was practically the same as upon the first, and consequently it seems to me that consistency, if nothing else, requires that we should adhere to and follow the former unanimous decision of this court, which, until reversed by a higher tribunal, is the law of the case. It is proper to add, however, that my conviction that the plaintiff's judgment ought not to be permitted to stand is not based entirely upon the principle of stare decisis; for I think now, as I did when the case was here before, that the evidence establishes clearly and satisfactorily a bald and unconscionable attempt upon the part of the plaintiff, through the agency of her husband, to evade the consequences of a usurious loan.